[No. C000498. Third Dist. May 13, 1988.]

CALIFORNIA BEER AND WINE WHOLESALERS ASSOCIATION, INC., et al., Petitioners, v. DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al., Respondents.

COUNSEL

Evans, Latham, Harris & Campisi and Thomas W. Latham for Petitioners.

John K. Van de Kamp, Attorney General, Paul H. Dobson and Ramon M. de La Guardia, Deputy Attorneys General, for Respondents.

Siegel, Moses & Schoenstadt, Morton Siegel, Michael A. Moses, Richard G. Schoenstadt, Livingston & Mattesich, Gene Livingston, Charles R. Teal, Carroll A. Bodie and Michael T. Jones as Amici Curiae on behalf of Respondents.

OPINION

BLEASE, Acting P. J.—In this original proceeding[1] we hold that subdivision (e)(1) of rule 106 of the Department of Alcoholic Beverage Control

[1] Business and Professions Code section 23090.5 provides: "No court of this state, except the Supreme Court and the courts of appeal . . ., shall have jurisdiction to review, affirm,

(the Department) is invalid for the reason that it authorizes the gift of "supplies" by a wholesaler to a retailer of beer in violation of Business and Professions Code section 25501, subdivision (a).[2] We will conclude that the offending provisions cannot be severed from the subdivision and will accordingly issue a peremptory writ of mandate directing the Department not to enforce it.

DISCUSSION

Petitioners are beer wholesalers and their association, the California Beer and Wine Wholesalers Association, Inc. The respondents are the Department and its director.[3]

This proceeding stems from the 1986 amendment to the Department's rule 106. (Cal. Admin. Code, tit. 4. § 106; Reg. 86, No. 4.)[4] Petitioners challenge the validity of subdivision (e)(1) of the rule, which provides in pertinent part that a wholesale "supplier may furnish, give, rent, loan or sell advertising specialties to a retailer provided such items bear conspicuous advertising required of a sign and *the total value of all retailer advertising specialties furnished by a supplier directly or indirectly, to a retailer shall not exceed $50 per brand in any one calendar year per retail premises.* . . . The furnishing or giving of any retailer advertising specialty shall not be conditioned upon the purchase of the suppliers [*sic*] product. . . . Retailer advertising specialties include but are not limited to trays, coasters, coin mats, napkins, thermometers, jiggers, clocks, stirring spoons, pouring spouts, sponges, towels, menu cards, meal checks, calendars and similar items approved by the Department and which have inconsequential value." (Italics added.)

The question tendered by the parties is whether the emphasized provisions exceed the rulemaking authority granted the Department under section 25600. That section generally authorizes the Department to adopt rules which determine the extent, if any, to which a wholesaler may "give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage . . . ." However, section 25600 conditions that authority by prohibiting the gift of "any premium, gift or free goods of

---

reverse, correct, or annul any order, rule, or decision of the department . . ., but a writ of mandate shall lie from the Supreme Court of the courts of appeal in any proper case."

[2] All further references to sections are to the Business and Professions Code, unless otherwise specified.

[3] Miller Brewing Company, a wholesaler of beer, appears as amicus curiae in support of the validity of rule 106.

[4] Effective January 1, 1988, the California Administrative Code was renamed the California Code of Regulations. (Stats. 1987, ch. 1375, § 3.5.)

greater than inconsequential value in connection with the sale or distribution of beer."

Petitioners initially claimed that this statutory prohibition was violated by subdivision (e)(1) of rule 106 because it authorized multiple individual gifts by a wholesaler to a retailer of beer in an *aggregate* value ($50 per brand per retail premises in any calendar year) that was not inconsequential. We need not resolve the question as posed or the embedded questions, e.g., whether the "inconsequential value" limitations of section 25600 apply only to individual items of gift or also to the aggregate value of such items.

The unstated premise of this claim is that the Department's rulemaking authority under section 25600 is unconditioned by any other provision of the statutory scheme of which it is a part. That premise is faulty. As next we show, the scope of the rulemaking authority granted the Department by section 25600 is limited by other provisions of the statutory scheme, here section 25501, subdivision (a). At our request the parties have briefed this issue. This opinion proceeds from that revised vantage point.

I

The statutory scheme within which these issues must be resolved is generally referred to as the tied-house laws. (See § 25500 et seq.) In those laws the Legislature has set forth a detailed set of rules governing the economic relations between the suppliers and retailers of alcoholic beverages. The legislative history of two of its provisions, sections 25501, subdivision (a) and 25600, together with the coordinate development of the related Department rules, aid in the determination of the scope of rulemaking authority of the Department. To that we turn.

In 1935, the Legislature enacted the predecessor to section 25501, subdivision (a). It read in pertinent part: "No manufacturer, . . . bottler, importer or wholesaler [of products of the brewing industry] shall: . . . [¶] (c) Furnish, give, rent, lend or sell, directly or indirectly, any equipment, fixtures or *supplies,* other than alcoholic beverage[s,] . . . to any person engaged in operating, owning or maintaining any "on-sale" premises where alcoholic beverages are sold for consumption on such premises . . . ." (Stats. 1935, ch. 330, § 54, p. 1148; italics added.)

In 1937 the predecessor to section 25600 was enacted. It provided that: "No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale of any alcoholic beverage. Any person

violating the provisions of this section shall be guilty of a misdemeanor." (Stats. 1937, ch. 758, § 89, p. 2174.)

In 1953, these provisions were given their current section numbers. (Stats. 1953, ch. 152, § 1, p. 1020.)

In 1958 the Department first adopted rule 106 as it pertains to the subjects under consideration. (See Cal. Admin. Notice Reg., tit. 4, Reg. 58, No. 15: a predecessor rule 106 dealt with another subject; cf. Cal. Admin. Code, tit. 4, § 106 (1945-1947).) In pertinent part, the provisions of section 25501, subdivision (a) were explicitly reflected in subdivision (b) of the rule. It provided that no supplier could "furnish, give, rent or sell any equipment, fixtures, signs, *supplies,* decorations, promotional materials, money, services or other things of value to any retailer, . . . except as provided in this rule or in the Alcoholic Beverage Control Act." (Italics added.) This provision was carried over through various amendments to the rule until replaced in connection with its 1977 amendment. (See Cal. Admin. Notice Reg., tit. 4, § 106: Reg. 62, No. 8 (Apr. 28, 1962) [subd. (b)]; Reg. 64, No. 16 (Aug. 1, 1964) [subd. (b)]; Reg. 74, No. 19 (May 11, 1974) [subd. (b)]; Cf. Reg. 77, No. 25 (June 18, 1977) [amending subd. (e) and replacing subd. (b) with a provision relating to interior signs].)

In addition, concurrent with this provision consistent with the prohibition on the giving of "supplies," subdivision (f) of rule 106 went on to prohibit the gift of any articles of "primary utilitarian value," defined as including "any . . . item potentially useful to a retailer in the conduct of a retail premises." (*Ibid.*) This is a functional definition of "supplies" as used in section 25501, subdivision (a), i.e., items useful to "any person engaged in operating, owning, or maintaining any on-sale premises where alcoholic beverages are sold for consumption on the premises . . . ." In 1977 that portion of the rule was placed in subdivision (e) and remained there until its removal by the 1986 revision of rule 106 under review. (See Cal. Admin. Notice Reg., tit. 4, § 106: Reg. 77, No. 25 (June 18, 1977).)

Of significance for this litigation, these latter provisions of rule 106 provided definitional examples of "[a]rticles of primary utilitarian value . . . ." They included "ash trays, coasters, beer mats, menu cards and folders, meal checks, wine lists providing anything other than a listing of wines, paper napkins, counter mats, back bar mats, thermometers, clocks, jiggers, stirring spoons, sponges, [and] pouring spouts . . . ." These examples fairly fit the meaning of "supplies" as used in section 25501, subdivision (a).

These subdivisions contained an exception which also is consistent with section 25501's prohibition on the gift of supplies. As set forth in the 1977

version of rule 106, subdivision (e) *permitted* the "giving of advertising specialties *without* significant utilitarian value other than advertising and costing not more than 15 cents per unit . . . . [such as] cocktail recipe booklets, sports schedules, outdoor and indoor recreation guides, booklets containing historical and patriotic writings, and similar items approved by the department."[5] (Italics added.) These items are clearly not supplies useful to the retailer, but items destined for consumers.

However, this latter provision ran afoul of former section 25600, which prohibited the giving of "any premium, gift, or free goods in connection with the sale of any alcoholic beverage." (Stats. 1937, ch. 758, § 89, p. 2174.) After the passage of legislation mandating state agencies to review their rules to determine whether they were based on statute (see Stats. 1979, ch. 567), the Department proposed the repeal of rule 106 because it lacked statutory authorization. Presumably, the Department sensibly had determined that a gift is a gift, within the absolute provision of former section 25600, regardless of its value.

The Legislature, cognizant of this proposal,[6] responded in 1983 by amending section 25600 to provide: "No licensee [see § 23009] shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of any alcoholic beverage except as provided by rules which shall be adopted by the department to implement this section or except as authorized by this division. [¶] No rule of the department may permit a licensee to give any premium, gift or free goods of greater than inconsequential value in connection with the sale or distribution of beer." (Stats. 1983, ch. 215, § 2, p. 683; Stats. 1985, ch. 803, § 1.) A sunset provision [§ 2] was deleted, effective January 1, 1986. (Stats. 1985, ch. 803, § 1.)[7]

The Department thereafter amended rule 106. It completely revised subdivision (e), abolishing the distinction between things of "primary utilitari-

---

[5] The rule further authorized the giving of "calendars costing not more than 30 cents per unit . . . provided that not more than one such calendar may be given by a supplier to any one retailer for his own use on the premises." (*Ibid.*)

[6] An urgency clause attached to the legislation explained the purpose of the amendment as to "permit a reinstatement of a similar rule" to that which the Department proposed to repeal. (Stats. 1983, ch. 215, § 3, pp. 683-684.) The detailed content and significance of this explanation is discussed in the text.

[7] Coincident with the amendment of section 25600, section 25503.1, governing the furnishing of displays, decorations, and other promotional materials, was also amended. (Stats. 1983, ch. 215, § 1, p. 683.) Prior to 1983, this section had limited the total costs of decorations provided to any licensee. (Stats. 1976, ch. 41, § 1, pp. 70-71.) The amendment removed this limitation and provided that the value shall not exceed the amount established by rules of the department . . . ." (Stats. 1983, ch. 215, § 1, p. 683.) Thereafter, as part of the 1986 amendment to rule 106, the Department limited the value of each decoration furnished by each supplier to $50. (Cal. Admin. Code, tit. 4, § 106, subd. (b)(4).)

an value" and things "without significant utilitarian value." It introduced a distinction between "retailer advertising specialties," defined as including the same items formerly prohibited as of "primary utilitarian value," and "consumer advertising specialties," defined as including items both within and without the former category of items of primary utilitarian value.[8]

We turn to the legal significance of these changes.

## II

The dispositive question is whether rule 106, subdivision (e)(1), violates the provisions of section 25501, subdivision (a), which prohibits the gift of "supplies," by a supplier of beer, of use to the owner or operator of an establishment where alcoholic beverages are sold for consumption on the premises.[9]

The Department concedes that section 25501, subdivision (a), if valid, limits its rulemaking authority under section 25600. However, it argues that section 25501, subdivision (a) has been impliedly repealed by the 1983 amendment to section 25600.[10] Petitioners disagree and so do we.

That conclusion implicates our scope of review of the rulemaking authority of the Department, which we next consider.

## A.

The rulemaking authority of the Department is limited by statute. "[N]o regulation adopted is valid or effective unless consistent and not in conflict with the statute and reasonably necessary to effectuate the purpose of the statute." (Gov. Code, § 11342.2.) A regulation is invalid (as "in

---

[8] "Consumer advertising specialties" are items "furnished by a supplier to a retailer [for unconditional distribution to consumers] or to the general public" and include such items as "ash trays, bottle or can openers, litter or shopping bags, matches, recipe cards, pamphlets, pencils, post cards, hats, posters, bottle or can stoppers . . . which bear conspicuous advertising . . . ." (Cal. Admin. Code, § 106, subd. (e)(2).)

[9] Section 25501 provides: "No manufacturer, bottler, importer, or wholesaler of products of the brewing industry shall: [¶] (a) Furnish, give, rent, lend, or sell, directly or indirectly, any equipment, fixtures, or *supplies,* other than alcoholic beverages, to any person engaged in operating, owning, or maintaining any on-sale premises where alcoholic beverages are sold for consumption on the premises; provided, however, that this subdivision shall not prohibit the furnishing of draft beer pumps and iceboxes to such persons who operate on a temporary basis." (Italics added.)

[10] Amicus curiae disagrees on that point but claims, along with the Department, that the items defined as "retailer advertising specialties" in subdivision (e)(1) of rule 106 are not "supplies" within the meaning of the prohibition of section 25501, subdivision (a).

conflict with" a statute) if it would "alter or amend the [governing] statutes or enlarge or restrict the agency's statutory power." (*Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 196 [114 Cal.Rptr. 897]; see also *Harris* v. *Alcoholic Bev. etc. Appeals Bd.* (1964) 228 Cal.App.2d 1, 6 [39 Cal.Rptr. 192].)

What deference should be accorded an administrative construction of a statute itself requires a judicial construction of the limits of the claimed source of rulemaking authority, whether that be the substantive provisions of an applicable statute or the statutory boundaries of a delegated power. "The proper scope of a court's review is determined by the task before it." (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].) It is in any event a judicial task. (See *Morris* v. *Williams* (1967) 67 Cal.2d 733, 748 [63 Cal.Rptr. 689, 433 P.2d 697]; see also *Wheeler* v. *State Bd. of Forestry* (1983) 144 Cal.App.3d 522, 527-528, 528, fn. 6 [192 Cal.Rptr. 693].) Where the language of the governing statute is intelligible to judges their task is simply to apply it, whether that be language of substantive limitation or the boundaries of a delegation of rulemaking authority. Where the intelligibility of the statutory language depends upon the employment of administrative expertise, which it is the purpose of a statutory scheme to invoke, the judicial role "is limited to determining whether the [Department] has reasonably interpreted the power which the Legislature granted it." (*Ralphs Grocery Co.* v. *Reimel* (1968) 69 Cal.2d 172, 176-177 [70 Cal.Rptr. 407, 444 P.2d 79], cf. p. 176, fn. 3; [meaning of "orderly wholesale marketing and distribution"].)

In this case no deference to an administrative interpretation of sections 25501 or 25600 is required (or for that matter sought) because the meaning of the applicable statutory language and its legislative history is accessible (and hence intelligible) to judges. What doubts might exist about the reach of these statutes are put to rest by the Department's own former rule 106, which the Legislature sought to validate by the 1983 amendment to section 25600.

### B.

The Department argues that the 1983 amendment to section 25600, which nowhere mentions section 25501, subdivision (a), impliedly repealed that section. It bases its claim upon inferences drawn from the legislative history of the 1983 amendment, as embodied in the urgency clause accompanying its enactment, and upon the content of the rule which the clause tells us it was designed to validate. We read that history as compelling the opposite conclusion, a conclusion which is consistent with the rule which disfavors the implied repeal of statutes and directs that we read statutes, if

possible, so as to preserve their validity and their coherence as an integrated body of law. (See 58 Cal.Jur.3d, Statutes, § 63, pp. 404-408 and cases cited therein.)

The legislative history begins with the urgency clause affixed to the legislation by which the 1983 amendment to section 25600 became law. It explains the reason for its enactment. "[T]he Department of Alcoholic Beverage Control is proposing to repeal its Rule 106 which relates to advertising and merchandising of alcoholic beverages. While this rule is not based firmly upon a statute, it has for many years served as an effective guideline to the alcoholic beverage industry for trade practices, and its repeal would create extensive disorderly marketing problems affecting all levels of the alcoholic beverage industry and the public. As the passage of this legislation would permit a *reinstatement* of a *similar rule fully based upon statutes,* if it is passed before the impending rule repeal as proposed by the Department of Alcoholic Beverage Control, it is necessary that this act take effect immediately." (Stats. 1983, ch. 215, § 3, pp. 683-684; italics added.)

This says that the Legislature, by its amendment of section 25600, intended to authorize the Department to reinstate a rule *"similar"* to preexisting rule 106 "fully based upon [all applicable] statutes . . . ." As we next show, the Department did not follow this direction. Rather, it modeled new rule 106 upon federal law.[11] This led to the conflict with section 25501, subdivision (a), which we assay by comparison of the present with the former rule 106.

As we have detailed above, former rule 106 contained two provisions which complied with section 25501, subdivision (a). First, before the 1977 amendment to the rule, subdivision (b) of rule 106 explicitly prohibited the gift of supplies by a wholesaler of use to a retailer for use on premises where alcohol is sold for consumption. Second, this prohibition was accompanied by subdivision (e), which, in the form immediately preceding the 1986

---

[11] The federal provision is found at 27 Code of Federal Regulations, chapter 1, section 6.85. It provides: "(a) General. An industry member may furnish, give, rent, loan, or sell retailer advertising specialties to a retailer if these items bear advertising matter and are primarily valuable to the retailer as point of sale advertising. These items include such things as trays, coasters, mats, menu cards, meal checks, paper napkins, foam scrapers, back bar mats, thermometers, clocks, and calendars. An industry member may add the name or name and address of the retailer to the retailer advertising specialty. [¶] (b) Limitations. (1) The total value of all retailer advertising specialties furnished by an industry member to a retailer may not exceed $50 per brand in any one calendar year per retail establishment. The value of a retailer advertising specialty is the actual cost of that item to the industry member who initially purchased it. Transportation and installation costs are excluded. [¶] (2) Industry members may not pool or combine their dollar limitations in order to provide a retailer with retailer advertising specialties valued in excess of $50 per brand."

amendment, prohibited the gift of items of "primary utilitarian value," which it defined as "any . . . item potentially useful to a retailer in the conduct of a retail premises. . . ." Such items are manifestly "supplies" within the meaning of section 25501, subdivision (a).

The Department builds its case for an implied repeal of that section solely upon a characterization of the language of former subdivision (e) of rule 106, which it implies supplies a guide for the interpretation of the sweep of authority granted the Department under section 25600. We agree that the former rule provides a semantic paradigm of compelling significance for this case. We disagree with the Department in its reading.

The Department says that "[a] fair reading of [former subdivision (e)(1)] by indirect language, allows suppliers 'as provided by the rule,' to give novelties, advertising specialties, and *articles of primary utilitarian value* to retailers as long as the cost did not exceed 15 cents per unit." (Italics added.) The difficulty with the claim is that the emphasized characterization is false. Former subdivision (e) did not authorize, even indirectly, the gift of items of "primary utilitarian value." It did exactly the opposite in permitting only "the giving of advertising specialties *without significant utilitarian value* other than advertising and costing not more than 15 cents per unit . . . ." (Italics added.) The Department ignores the fact, which places the headstone on its argument, that former subdivision (e) defined, as examples of *prohibited* gifts of "primary utilitarian value" (i.e. "item[s] potentially useful to a retailer in the conduct of a retail premises"), precisely the same list of items (viz. "coasters, beer mats, menu cards" etc.) as are now explicitly *permitted* under the challenged subdivision (e)(1) as "retailer advertising specialties."[12] These items, as we have said, are manifestly "supplies" within the meaning of the prohibition of section 25501, subdivision (a).

The Department did not follow the directions in the urgency clause affixed to the 1983 amendment of section 25600. Rather than adopt a "similar" rule 106, which it was the intent of the Legislature to validate, it did quite the opposite. It transmuted the items that were prohibited as "supplies" into items that were permitted as gifts. The transmutation of that which is prohibited into that which is authorized is, to say the least, not to engage a similarity. The irony in all this is that in so doing the Department employed legislation aimed at validating its prior unlawful rule to sanction another unlawful rule.

---

[12] There is one insignificant exception. New subdivision (e) substitutes "trays" for "ash trays."

Since section 25600 was not meant to repeal section 25501, subdivision (a), the latter provision preempts the conflicting provisions of subdivision (e)(1) of rule 106.

### C.

■ The final question is whether the conflict between the statute and the rule may be resolved by severing the offending portion of the rule. The conflict is only partial. Section 25501, subdivision (a) applies only to supplies provided to "on-sale premises where alcoholic beverages are sold for consumption on the premises." The rule has broader application; it applies to advertising specialties given to any "retailer." Similarly, the statute applies only to a "manufacturer, bottler, importer, or wholesaler of products of the brewing industry," while the rule governs all "licensees."

In fashioning a remedy for this conflict we proceed by adopting rules drawn by analogy to the law applicable to the constitutional validity of a statute, itself a species of preemption. With respect to a statute which conflicts with constitutional law, the portion which is not in conflict may be severed from the whole provided that " ' "*the language of the* [invalid portion of the statute] *is mechanically severable,* that is, where the valid and invalid parts can be separated by paragraph, sentence, clause, phrase, or even single words." ' " (*People's Advocate, Inc.* v. *Superior Court* (1986) 181 Cal.App.3d 316, 330 [226 Cal.Rptr. 640], quoting from *Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315, 330-331 [118 Cal.Rptr. 637, 530 P.2d 605].) "If a grammatical cut is not possible, if the language 'is incapable of mechanical severance [it] must survive, if at all, as a wholly integrated enactment.' " (*People's Advocate, supra,* at p. 330, citing to *Olson* v. *Cory* (1980) 27 Cal.3d 532, 544 [178 Cal.Rptr. 568, 636 P.2d 532].) That invokes the further test that, in order to be valid, "The remaining provisions must stand on their own, unaided by the invalid provisions nor rendered vague by their absence nor inextricably connected to them by policy considerations." (*Id.,* at p. 332.)

Here, the provisions of subdivision (e)(1) of rule 106, which apply to all alcoholic beverages, are in conflict with section 25501, subdivision (a) insofar as they apply to products of the brewing industry. However, we are not free to redefine alcoholic beverages as specified by the code (see § 23004), as used in rule 106, so as to eliminate beer. We may not rewrite a statute in the guise of interpreting it. (See *Metromedia, Inc.* v. *City of San Diego* (1982) 32 Cal.3d 180, 186-187 [185 Cal.Rptr. 260, 649 P.2d 902], relying on *Seaboard Acceptance Corp.* v. *Shay* (1931) 214 Cal. 361, 369 [5 P.2d 882]; see also *People's Advocate, Inc.* v. *Superior Court, supra,* 181 Cal.App.3d at p. 330,

fn. 15 and cases cited therein.) That is a matter which must be remedied by the legislative action of the Department.

Consequently, we are in the grammatical posture that the challenged provisions which define "retail advertising specialties" so as to transgress section 25501, subdivision (a) cannot be redefined or severed so as to preserve their valid applications. The definition is the core of subdivision (e)(1) of rule 106. With its demise there is nothing grammatically left to enforce. We therefore hold the subdivision invalid and unenforceable. However, since that subdivision is grammatically independent of the subjects covered in the remainder of rule 106, it may be severed from them so that rule 106 need not be rendered invalid in its entirety. (See *Santa Barbara Sch. Dist.* v. *Superior Court, supra,* 13 Cal.3d at pp. 331-332.)

## DISPOSITION

The petition for writ of mandate is granted. The Department is directed not to enforce the provisions of subdivision (e)(1) of rule 106. The alternative writ having served its purpose is discharged.

Sparks, J., and Sims, J., concurred.