[No. C003572. Third Dist. Aug. 29, 1988.]

MILLER BREWING COMPANY, Petitioner, v.
DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL et al.,
Respondents.

6

COUNSEL

Gene Livingston and Melissa M. Meith for Petitioner.

John K. Van de Kamp, Attorney General, Paul H. Dobson and Ramon M. de la Guardia, Deputy Attorneys General, for Respondents.

OPINION

**PUGLIA, P. J.**—Petitioner Miller Brewing Company (Miller) seeks a writ of mandate directing respondents Department of Alcoholic Beverage Control and its Director (Department) to refrain from enforcing Department's rule 106 so as to prohibit Miller from giving things of value to members of the public in circumstances unrelated to a sale of alcoholic beverages. We shall deny the petition.

Miller is a licensed manufacturer of beer and thus subject to regulation by the Department. (See Cal. Const., art. XX, § 22.) In 1987 Miller produced, financed and sponsored a comedy concert tour featuring comedian Joe Piscopo. Some of the concerts were held in California, and the proceeds donated to the Olympic Training Center, a nonprofit corporation providing free training facilities to amateur athletes training to compete in the Olympics. Miller planned to promote the tour in California over cosponsoring radio stations. Miller would provide concert tickets and jackets to the cosponsoring stations which would in turn give them to listeners who called in when the stations advertised the concert and the "give-aways." The tickets would identify Miller as a sponsor of the concert and the jackets would bear logos of a Miller product and the concert. Recipients of the promotional merchandise would not be required to purchase any Miller product, nor would they be required to have any contact with Miller.

Miller sought the Department's advance approval of the promotional scheme. The Department responded by notifying Miller that it would consider the furnishing of free tickets and jackets a violation of Business and Professions Code section 25600 and its rule 106, which prohibit a licensee

from giving any premium, gift or free goods in connection with the "sale or distribution" of any alcoholic beverage. The Department further advised Miller that if it proceeded with the proposed promotion, the Department would likely initiate disciplinary action, potentially leading to fines and revocation of Miller's licenses. Miller seeks a writ of mandate directing the Department to refrain from implementing or enforcing its rule 106 so as to prohibit Miller from giving things of value to promote itself, its products, or events sponsored by it except when the donation is made in connection with a transaction "for consideration, transferring title to, delivering, or soliciting or receiving an order for alcoholic beverages."

Miller's petition invokes the original jurisdiction of this court under Business and Professions Code section 23090.5. (All further statutory references to sections of an undesignated code are to the Business and Professions Code.) Section 23090.5 "provide[s] for judicial review of the orders, rules or decisions or other acts of the department in the performance of its duties when acting in its administrative [quasi-legislative] rather than in its limited judicial capacity." (*Samson Market Co.* v. *Kirby* (1968) 261 Cal.App.2d 577, 581 [68 Cal.Rptr. 130]; see also *Top Hat Liquors* v. *Department of Alcoholic Beverage Control* (1974) 13 Cal.3d 107, 111-112 [118 Cal.Rptr. 10, 529 P.2d 42]; *Department of Alcoholic Beverage Control* v. *Alcoholic Beverage Control Appeals Bd.* (1987) 195 Cal.App.3d 812, 819 [240 Cal.Rptr. 915].)[1]

Initially, we reject the Department's assertion that Miller has not made a sufficient showing of injury to its beneficial interest to justify mandamus relief. Miller asserts that it plans to hold other "public events and benefit performances," presumably using the described promotional scheme. We cannot say that Miller's interest in proceeding with the planned promotion without being disciplined by the Department is so ". . . abstract, inchoate or . . . lacking in substantiality that the 'extraordinary' remedy of mandamus is not warranted." (8 Witkin, Cal. Procedure (3d ed. 1985) Extraordinary Writs, § 66, pp. 704-705.)[2]

Section 25600 provides: "No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of

---

[1] Section 23090.5 provides: "No court of this state, except the Supreme Court and the courts of appeal to the extent specified in this article, shall have jurisdiction to review, affirm, reverse, correct, or annul any order, rule, or decision of the department or to suspend, stay, or delay the operation or execution thereof, or to restrain, enjoin, or interfere with the department in the performance of its duties, but a writ of mandate shall lie from the Supreme Court or the courts of appeal in any proper case."

[2] The Department does not contend that judicial review is barred by failure adequately to exhaust available administrative remedies. (Cf. *Department of Alcoholic Beverage Control* v. *Alcoholic Beverage Control Appeals Board, supra*, 195 Cal.App.3d at pp. 818-820; *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212, 219-223 [239 Cal.Rptr. 470].)

any alcoholic beverage except as provided by rules which shall be adopted by the department to implement this section or except as authorized by this division."

The Department is authorized to "make and prescribe those reasonable rules as may be necessary or proper to carry out the purposes and intent of Section 22 of Article XX of the California Constitution and to enable it to exercise the powers and perform the duties conferred upon it by that section or by [the Alcoholic Beverage Control Act],[3] not inconsistent with any statute of this state . . . ." (§ 25750, subd. (a).) Pursuant to that authority and in apparent implementation of the provisions of section 25600, the Department has adopted its rule 106, which provides: "(a) Free Goods. No licensee shall, directly or indirectly, give any premium, gift, or free goods in connection with the sale or distribution of alcoholic beverages[.] [¶] (b) Definitions. Unless the context otherwise requires, the following definitions govern the construction of this rule. [¶] (8) 'Sales' as used in this rule means the total business of merchandising alcoholic beverages, including the solicitation of customers and the various methods and procedures used in advertising and promoting the sale of alcoholic beverages, as well as the actual transfer of title of alcoholic beverages." (Cal. Code Regs., tit. 4, § 106.)

In contrast to the definition of "sales" in subdivision (b)(8) of rule 106 is the statutory definition in section 23025: " 'Sell' or 'sale' and 'to sell' includes any transaction whereby, for any consideration, title to alcoholic beverages is transferred from one person to another, and includes the delivery of alcoholic beverages pursuant to an order placed for the purchase of such beverages and soliciting or receiving an order for such beverages, but does not include the return of alcoholic beverages by a licensee to the licensee from whom such beverages were purchased."

The Department has advised Miller that donation of tickets and jackets in conjunction with radio advertising of the Joe Piscopo comedy tour ". . . would be an indirect violation of [s]ection 25600 and [r]ule 106" because the donations would constitute ". . . giving gifts, free goods or premiums in connection with the sale, advertising or merchandising of alcoholic beverages." ██ Miller asserts that the Department's refusal to approve the proposed promotion is based on an unduly distended definition of "sales" in its rule 106, which is inconsistent with the more limited definition of "sale" contained in section 23025, the enabling statute.

██ "The scope of judicial review of quasi-legislative administrative action is well settled. [Fn. and citations.] To be valid, such administrative

---

[3] Division 9, commencing with section 23000.

action must be within the scope of authority conferred by the enabling statute. [Citations.] [The courts] have long recognized, of course, that 'the construction of a statute by officials charged with its administration, including their interpretation of the authority invested in them to implement and carry out its provisions, is entitled to great weight . . . .' [Citation.] Nevertheless, '[w]hatever the force of administrative construction, . . . final responsibility for the interpretation of the law rests with the courts.' [Citations.] If, in interpreting the statute, the court determines that the administrative action under attack has, in effect, 'alter[ed] or amend[ed] the statute or enlarge[d] or impair[ed] its scope,' it must be declared void. [Citations.] Thus, if the court concludes that the administrative action transgresses the agency's statutory authority, it need not proceed to review the action for abuse of discretion; in such a case, there is simply no discretion to abuse. [Citations.]" (*Association for Retarded Citizens* v. *Department of Developmental Services* (1985) 38 Cal.3d 384, 390-391 [211 Cal.Rptr. 758, 696 P.2d 150].)

Here, the enabling statute prohibits donations made "in connection with the sale or distribution of any alcoholic beverage . . . ." (§ 25600.) ▮▮▮▮ "Sale" is defined in section 23025 to mean "any transaction whereby, for any consideration, title to alcoholic beverages is transferred from one person to another . . . ."[4] Notwithstanding the precise statutory definition of "sale," the Department's rule 106(b)(8) expands "sale" to encompass ". . . the total business of merchandising alcoholic beverages, including the solicitation of customers and the various methods and procedures used in advertising and promoting the sale of alcoholic beverages, as well as the actual transfer of title of alcoholic beverages."

▮ In refusing approval of Miller's promotional scheme on the ground that Miller proposed to give away concert tickets and jackets in connection with "sales" of alcoholic beverages, as expansively defined by its rule 106, the Department exceeded the scope of section 25600 as it relates to the "sale" of alcoholic beverages. In regard to sale, section 25600 as limited by section 23025, only authorizes the Department to prohibit donations made

[4] The Department states that the statutory definition of sale "is generally used in the context of *taxes* and *taxable* transactions." No authority is cited excluding the term "sale" contained in section 25600 from the definition in section 23025. Moreover, " '[w]hen a statute prescribes the meaning to be given particular terms used by it, that meaning is generally binding on the courts.' " (*Great Lakes Properties, Inc.* v. *City of El Segundo* (1977) 19 Cal.3d 152, 156 [137 Cal.Rptr. 154, 561 P.2d 244], quoting *People* v. *Western Air Lines, Inc.* (1954) 42 Cal.2d 621, 638 [268 P.2d 723].) In any event, the definition of "sale" in section 23025 is consistent with the common definition of the term: "the transfer of ownership of and title to property from one person to another for a price[.]" (Webster's New Collegiate Dict. (9th ed. 1983) p. 1037.)

in connection with the transfer of title of alcoholic beverages for any consideration.

However, the Department has authority not only to enforce its regulations, but also to enforce statutes regulating licensees of alcoholic beverages. (See *Kirby* v. *Alcoholic Bev. etc. Appeals Bd.* (1969) 71 Cal.2d 1200, 1203-1204 [81 Cal.Rptr. 241, 459 P.2d 657].) Rule 106 prohibits donations made in connection not only with "sale" but also with "distribution" of alcoholic beverages. And section 25600 expressly prohibits licensees from "directly or indirectly [giving] any premium, gift, or free goods in connection with the *sale or distribution* of any alcoholic beverage except as provided by rules which shall be adopted by the department to implement this section or except as authorized by this division." (Italics added.) Miller cites no rule or statute nor are we aware of any which authorizes the furnishing of free concert tickets and jackets under the circumstances described here. Consequently, the Department can prohibit Miller's proposed promotion if it constitutes a donation made in connection with the "distribution" of alcoholic beverages.

Unlike "sale," "distribution" is defined neither in the statute nor in rule 106. Miller would define "distribution" as "supplying goods from manufacturers and wholesalers to retailers and consumers." Indeed, one accepted definition of "distribution" is "[t]he act or process of distributing" with "distribute" being defined as "[t]o give out or deliver." (Webster's New Collegiate Dict. (9th ed. 1983) p. 368.) Under this definition, Miller's proposed promotion would not constitute a "distribution" in violation of section 25600 because no alcoholic beverages are to be "given out" or "delivered."

Citing to the second edition of Webster's New World Dictionary of the American Language, the Department would define "distribution" to mean "the process by which commodities get to final consumers, including storing, selling, shipping and *advertising*." (See also Webster's New Collegiate Dict. (9th ed. 1983) pp. 368, 742, defining "distribution" as "the marketing or merchandising of commodities" with "merchandising" being defined as "sales promotion as a comprehensive function including market research, development of new products, coordination of manufacture and marketing, and effective advertising and selling.") Under this definition of "distribution," Miller's proposed promotion would violate section 25600 since the donation of jackets and tickets would be made in connection with the "merchandising" or "advertising" of alcoholic beverages.

Courts "give effect to statutes according to the usual, ordinary import of the language employed in framing them. When statutory language is

clear and unambiguous there is no need for construction, and courts should not indulge in it. [Citations.]" (*West Covina Hospital* v. *Superior Court* (1986) 41 Cal.3d 846, 850 [226 Cal.Rptr. 132, 718 P.2d 119, 60 A.L.R.4th 1257].) Here, the wide spectrum of accepted definitions of the term "distribution" as used in section 25600 gives rise to ambiguity. "This ambiguity invites statutory construction[.]" (*Sand* v. *Superior Court* (1983) 34 Cal.3d 567, 570 [194 Cal.Rptr. 480, 668 P.2d 787].) "Since it is not clear from the words themselves what was intended, this court is obliged ' "to accept that [meaning] intended by the framers of the legislation, so far as its intention can be ascertained." [Citation.]' [Citation.]" (*People* v. *Martinez* (1987) 194 Cal.App.3d 15, 19 [239 Cal.Rptr. 272].) "To discern legislative intent, we must examine the legislative history and the statutory context of the act under scrutiny. [Citations.]" (*Sand* v. *Superior Court, supra,* 34 Cal.3d at p. 570.)

Preliminarily, we reject Miller's assertion that the meaning of the term "distribution" as used in section 25600 can be determined by reference to use of the same term in other provisions of the Alcoholic Beverage Control Act. The cited provisions of the Act are of no assistance in resolving the ambiguity. (Compare §§ 23357.2, 23366.3, 25503.1.) ▮ Moreover, " 'There is no rule of law that necessarily requires the same meaning to be given to the same word used in different places in the same statute.' [Citations.]" (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706].)

Furthermore, we are not bound to defer to the Department's construction of section 25600. ▮ "Where the intelligibility of the statutory language depends upon the employment of administrative expertise, which it is the purpose of a statutory scheme to invoke, the judicial rule 'is limited to determining whether the [agency] has reasonably interpreted the power which the Legislature granted it.' [Citation.] [¶] [However,] no deference to an administrative interpretation of [a statute] is required [if] the meaning of the applicable statutory language and its legislative history is accessible (and hence intelligible) to judges." (*California Beer & Wine Wholesalers Assn.* v. *Department of Alcoholic Beverage Control* (1988) 201 Cal.App.3d 100, 107 [247 Cal.Rptr. 60].) Here, no convincing argument has been advanced demonstrating that section 25600 can only be interpreted by resort to "employment of administrative expertise." Rather, the statute is susceptible to construction by resort to the statutory language, the legislative history of the statute and "the historical circumstances of its enactment." (See *People* v. *Martinez, supra,* 194 Cal.App.3d at p. 19, citing *People* v. *Black* (1982) 32 Cal.3d 1, 5 [184 Cal.Rptr. 454, 648 P.2d 104]; *People* v. *Jackson*

(1985) 166 Cal.App.3d 187, 190 [212 Cal.Rptr. 121]; *People* v. *Horn* (1984) 158 Cal.App.3d 1014, 1031 [205 Cal.Rptr. 119].)

Prior to its 1983 amendment, section 25600 read: "No licensee shall directly or indirectly, give any premium, gift, or free goods in connection with the sale of any alcoholic beverage. Any person violating the provisions of this section is guilty of a misdemeanor." "Sale" was then defined as it is today as "any transaction whereby, for any consideration, title to alcoholic beverages is transferred from one person to another, and includes the delivery of alcoholic beverages pursuant to an order placed for the purchase of such beverages and soliciting or receiving an order for such beverages, but does not include the return of alcoholic beverages by a licensee to the licensee from whom such beverages were purchased." (§ 23025.)

Notwithstanding this pre-1983 statutory language, the Department's rule 106 then expansively provided in pertinent part that: " 'Sale' means the total business of merchandising alcoholic beverages, including the solicitation of customers and the various methods and procedures used in advertising, as well as the actual transfer of title[,]" and that "[w]ithout violating this rule, a licensee may give or furnish free goods or gifts in connection with the advertising or sale of merchandise other than alcoholic beverages, provided such free goods or gifts shall not be given or furnished, directly or indirectly, in connection with the advertising or sale of alcoholic beverages." (Former Cal. Admin. Code, tit. 4, § 106, subds. (a)(7), (h)(4).)

In reviewing and reporting on regulations administered by it pursuant to former Government Code section 11349.7 (Stats. 1979, ch. 567, § 1), the Department determined that "[m]any portions of . . . rule [106] are believed to be inconsistent with the statute it supposedly implements. For instance the definition of 'sale' in the rule is far more comprehensive than the definition of 'sale' in section 23025." (Admin. Code Review, tit. 4, ch. 1, Project Com. Preliminary Analysis.) Thereafter, Assembly Bill No. 686 was introduced, resulting in the 1983 amendment of section 25600, expanding the scope of the statutory prohibition to donations made in connection with the "distribution" as well as the "sale" of alcoholic beverages. The urgency provision accompanying the 1983 amendment to section 25600 stated: "Pursuant to the passage of legislation which mandates that state agencies review their regulations to determine if they are properly based upon existing statutes, the Department of Alcoholic Beverage Control is proposing to repeal its Rule 106 which relates to advertising and merchandising of alcoholic beverages. While this rule is not based firmly upon a statute, it has for many years served as an effective guideline to the alcoholic beverage industry for trade practices, and its repeal would create extensive disorderly

marketing problems affecting all levels of the alcoholic beverage industry and the public. As passage of this legislation would permit a reinstatement of a similar rule fully based upon statutes, if it is passed before the impending rule repeal as proposed by the Department of Alcoholic Beverage Control, it is necessary that this act take effect immediately." (Stats. 1983, ch. 215, § 3, pp. 683-684.)

■ The statutory language leaves no doubt that in amending section 25600 to prohibit donations made in connection with "distribution" as well as "sale" of alcoholic beverages, the Legislature intended to authorize the Department to enforce its rule 106, which then prohibited donations made in connection with the advertising or sale of alcoholic beverages, with "sale" being defined as "the total business of merchandising alcoholic beverages, including the solicitation of customers and the various methods and procedures used in advertising, as well as the actual transfer of title." (Former Cal. Admin. Code, tit. 4, § 106, subds. (a)(7), (h)(4).) ■ Hence the term "distribution" as used in section 25600 must be afforded the broad definition advocated by the Department, that is, "the process by which commodities get to final consumers, including storing, selling, shipping and advertising" (Webster's New World Dict. of the American Language (2d ed. 1968) p. 410), or "the marketing or merchandising of commodities" with "merchandising" being defined as "sales promotion as a comprehensive function including market research, development of new products, coordination of manufacture and marketing, and effective advertising and selling" (Webster's New Collegiate Dict. (9th ed. 1983) pp. 368, 742).

■ Accordingly, section 25600 confers on the Department authority to prohibit Miller from donating concert tickets identifying Miller as the sponsor of the concert and jackets bearing logos of a Miller product and the concert, as the donations would constitute gifts or free goods donated in connection with the "distribution," or "merchandising" or "advertising," of alcoholic beverages. Moreover, after the 1983 amendment to section 25600, the Department was authorized to amend rule 106 to prohibit donations made in connection with the "distribution," or "merchandising" or "advertising," of alcoholic beverages. (See § 25750, subd. (a); Cal. Code Regs., tit. 4, § 106.)

Therefore in prohibiting Miller from engaging in the proposed promotion, the Department has acted within the scope of the authority conferred by the enabling statute, and Miller is not entitled to a writ of mandate.

The petition for writ of mandate is denied.

Blease, J., and Marler, J., concurred.