[Nos. E022984, E023008. Fourth Dist., Div. Two. May 11, 1999.]

DEPARTMENT OF ALCOHOLIC BEVERAGE CONTROL, Petitioner, v. ALCOHOLIC BEVERAGE CONTROL APPEALS BOARD et al., Respondents;
ANHEUSER-BUSCH, INC., Real Party in Interest;
CALIFORNIA BEER AND BEVERAGE DISTRIBUTORS, Intervener.

## COUNSEL

Bill Lockyer, Attorney General, Silvia M. Diaz and Matthew D. Botting, Deputy Attorneys General, for Petitioner.

Martha V. Wilson for Respondent Alcoholic Beverage Control Appeals Board.

Pillsbury Madison & Sutro, James M. Seff and Kevin M. Fong for Real Party in Interest.

McCutchen, Doyle, Brown & Enersen, John R. Reese and Christopher B. Hockett for Intervener.

## OPINION

RICHLI, J.— ■ This petition requires us to determine the legality of a practice in which respondent[1] Anheuser-Busch, Inc. (Anheuser-Busch) purchases its own products in bars or other drinking establishments, and offers customers the opportunity to exchange its product for whatever brand they are currently drinking. (The practice is commonly known as "trade spending" or "trade sampling.") Petitioner, the Department of Alcoholic Beverage Control (Department), attempted to put an end to the practice, but, after administrative proceedings,[2] the Alcoholic Beverage Control Appeals Board (Board) found no violation of statute or regulation. The Department sought review pursuant to Business and Professions Code section 23090.[3] We issue the writ of review, and conclude that the challenged practice is, in fact, unlawful. Accordingly, we annul the order and remand for further proceedings.

### The Relevant Law

■ The issue is one of construing, and harmonizing if possible, a limited number of statutes and regulations. As a general principle, the Department may not adopt a rule which would conflict with the enabling or otherwise governing statute. (*Webb* v. *Swoap* (1974) 40 Cal.App.3d 191, 196 [114 Cal.Rptr. 897].) While we give deference to an administrative construction of its own regulation, if the language of the rule does not require administrative expertise, we simply apply it as we understand it. (*California Beer & Wine Wholesalers Assn.* v. *Department of Alcoholic Beverage Control* (1988) 201 Cal.App.3d 100, 106-107 [247 Cal.Rptr. 60].)

---

[1]Although the beer manufacturer is technically a real party in interest, both it and the Alcoholic Beverage Control Appeals Board have filed responsive briefs. We use the term "respondent" generally to describe Anheuser-Busch, which is the party facing sanctions and which has appeared here to argue in defense of the board's decision.

Also appearing as an intervener on the side of the Department of Alcoholic Beverage Control is the California Beer and Beverage Distributors, a trade association.

[2]We need not detail the course of the proceedings below.

[3]All subsequent statutory references are to the Business and Professions Code.

■ The statutes and regulations applicable to the issue posed by this appeal are as follows:[4]

1. Section 25600, subdivision (a), prohibits any licensee from giving "any premium, *gift*, or free goods in connection with the sale or distribution of any alcoholic beverage[] *except as provided by rules that shall be adopted by [the Department] to implement this section or as authorized by this division*." (Italics added.) Pursuant to the authorization of section 25600, subdivision (a), the Department has adopted specific rules regarding gifts of alcoholic beverages. Regulation 106 prohibits "premium[s], gift[s] [or] free goods" in connection with the *sale* or *distribution* of alcoholic beverages. Regulation 52, subdivision (b) prohibits gifts of alcoholic beverages "in connection with the *sale* of an alcoholic beverage." (Italics added.) Interpreting the two rules to give meaning to each (*People* v. *Preller* (1997) 54 Cal.App.4th 93, 97 [62 Cal.Rptr.2d 507]), we conclude that rule 106 applies only to gifts other than alcoholic beverages and regulation 52, subdivision (b) applies to limits on gifts of alcoholic beverages.

2. Section 23386 authorizes wholesalers such as Anheuser-Busch to give away "samples" in accordance with such "rules that may be prescribed by [the Department]." One such rule, regulation 52, subdivision (a), allows free samples only to other licensees, and not to consumers.

The significance of the above statutes and rules is that a licensee may not give a gift in connection with the sale or distribution of any alcoholic beverage (reg. 52, subd. (b)) and may give free samples only to other licensees, not consumers.

Having laid out the framework, we state the questions which are posed by this petition: when Anheuser-Busch provides its beer products to consumers in a retail establishment, is it giving a "gift" *of alcoholic beverages* as apparently permitted by regulation 52, subdivision (b), or a gift forbidden by regulation 106? Or is it providing a "sample," forbidden by regulation 52, subdivision (a)?

It is commonplace to remark that "[t]o ask the question is to answer it" (see, e.g., *People* v. *Tilbury* (1991) 54 Cal.3d 56, 78 [284 Cal.Rptr. 288, 813 P.2d 1318]), but this is not such a case. Complicating the matter is the fact that the Department has unsuccessfully attempted to obtain approval of a change to regulation 52 which would bar gifts of alcohol in connection with *either* a sale *or* the distribution of alcohol, rather than merely in connection

---

[4]All subsequent references to regulations are to those found in title 4 of the California Code of Regulations.

with a *sale*, as the rule presently reads. If this change had been approved, the transactions before us would have been unquestionably unlawful, but the change was rejected by the Office of Administrative Law.

## DISCUSSION

First, we will dispose of those arguments of the Department which we have *not* found to be persuasive.

The Department suggests that the actions of respondent were unlawful under regulation 52, subdivision (b) as a gift of alcoholic beverages in connection with the sale of an alcoholic beverage. While there is no dispute that respondent provided the beers in connection with the *distribution* of beer (see *Miller Brewing Co.* v. *Department of Alcoholic Beverage Control* (1988) 204 Cal.App.3d 5, 15 [250 Cal.Rptr. 845]), we cannot agree that regulation 52, subdivision (b) was violated.

According to the testimony at the administrative hearing, Anheuser-Busch agents purchased beer from a bar, and then gave this beer to customers of the bar. In a broad sense, of course, a sale was involved—that from the bar to Anheuser-Busch. But we think that the commonsense meaning of regulation 52, subdivision (b) is limited to gifts of alcoholic beverages which are made between a seller and a buyer—for example, gifts given by a manufacturer to encourage a retailer to purchase the manufacturer's products, or gifts by a retailer to a consumer, similarly to encourage or reward a purchase. The vice sought to be prevented in these situations is clear; however, in our case, whether Anheuser-Busch bought the beer from the bar or brought it from its own stock does not in any way affect the challenged transaction, which is the giving of the beer to a customer.[5] The legality of "trade sampling" cannot depend on whether the manufacturer brings its own beer, or obtains the giveaway beers through the conduit of the bar operator.

Next, the Department points to section 25600, subdivision (b), which prohibits the Department from adopting any rule which allows a licensee to give any "premium, gift, or free goods of greater than inconsequential value in connection with the sale or distribution of beer." "Inconsequential value" is defined as either a cost of less than 25 cents per unit, or less than $15 in the aggregate "for all those items given by a single supplier to a single retail premises per calendar year."

---

[5]Obviously, a manufacturer conducting "trade sampling" on retail premises would not wish to cut into the operator's sales, but would rather wish to encourage the retailer to allow it to conduct such "trade sampling" by increasing the operator's actual sales of beverages. Thus, a manufacturer would naturally buy cans or bottles of its own beer from the bar, rather than bring supplies from its warehouse.

On its face, this appears to apply here.[6] The Board's position is that the statute was intended to apply only to transactions between manufacturers and/or wholesalers on the one hand, and retailers on the other hand. The Board asserts that this is implicit in the clause which refers to items given to a "retail premises." If section 25600, subdivision (b) applied to gifts or premiums *in general*, subdivision (a) of the same statute—which authorizes the Department to adopt rules to regulate gifts—would be virtually meaningless, because the Legislature would hardly have needed to authorize the Department to adopt regulations governing "gifts or premiums in connection with the sale or distribution of alcoholic beverages" if no gifts worth more than a quarter were permitted at all.[7] Furthermore, it is pointed out that the Department itself has adopted a rule—regulation 52, subdivision (b)—which regulates, but *permits*, gifts of alcoholic beverages (so long as they are not in connection with a sale) which would necessarily violate the 25-cent limit of section 25600, subdivision (b). This rule is consistent only with an interpretation of the latter section as placing limitations only on gifts given by distributors to retailers.

As a rule, it is appropriate for courts to accept the administrative expertise of the Department, and the Board, on this point. (See *California Beer & Wine Wholesalers Assn.* v. *Department of Alcoholic Beverage Control, supra,* 201 Cal.App.3d 100.) However, the Department expresses urgent concerns that the above construction would encourage large manufacturers and wholesalers to shower expensive gifts, prizes, and premiums on consumers. While we are not persuaded that this concern is valid,[8] we need not rely on section 25600 in light of the reasoning expressed later in this opinion. Accordingly, we do not decide the point.

We now turn to the primary judicial authority cited by the Department. In *Miller Brewing Co.* v. *Department of Alcoholic Beverage Control, supra,* 204 Cal.App.3d 5, the brewing company provided free goods in connection with a comedy concert tour which it sponsored and which presumably prominently featured its name and/or logo. The case revolved around the proper construction of the term "distribution" as used in section 25600 and regulation 106; there was no question but that such gifts in connection with "distribution" (however *it might be defined*) could be regulated under the

---

[6]We will assume that a can or bottle of beer indisputably has a value of more than 25 cents.

[7]Section 25600, subdivision (c) provides a slightly more generous rule for wine and spirits licensees, who may give items to a single retail premises of a value not exceeding $50 per year.

[8]Regulation 106 would still prevent manufacturers and wholesalers from offering expensive gifts or prizes *other than of alcoholic beverages*, because any such items would clearly be provided in the context of "distribution" as defined in *Miller Brewing Co.* v. *Department of Alcoholic Beverage Control, supra,* 204 Cal.App.3d 5.

statute, and *had* been regulated under the rule. The *Miller* court created a broad definition of "distribution" which included the activity in question. As relevant here, "distribution" was held to cover " 'the marketing or merchandising of commodities' . . . 'sales promotion as a comprehensive function including market research . . . and effective advertising and selling.' " (204 Cal.App.3d at p. 15.)

The beers in this case were indisputably provided in connection with the "distribution" of alcoholic beverages as defined in *Miller*. However, it is not as clear as the Department suggests that regulation 106 applies here. That rule *prohibits* gifts in general, while regulation 52, subdivision (b) plainly *permits* gifts of alcoholic beverages not connected with a sale. ■ As a principle of construction, it is well established that a specific provision prevails over a general one relating to the same subject. (*County of Santa Clara* v. *Deputy Sheriffs' Assn.* (1992) 3 Cal.4th 873, 883 [13 Cal.Rptr.2d 53, 838 P.2d 781].) Although this rule applies only if the two provisions cannot be reconciled (*Garcia* v. *McCutchen* (1997) 16 Cal.4th 469, 477-478 [66 Cal.Rptr.2d 319, 940 P.2d 906]), arguably that is the case here. ■ If regulation 106 applied to gifts of alcoholic beverages, under the broad definition of "distribution" adopted in *Miller Brewing Co.,* regulation 52, subdivision (b) would become meaningless.

The Department's position is that regulation 106 does regulate gifts of alcohol as well as other merchandise or promotional items, but regulation 52, subdivision (b) constitutes an exception to the general prohibitions of the former rule. The Department's view, however, is that regulation 52, subdivision (b) permits only incidental, social gifts. The Department takes the position that regulation 52, subdivision (b) does not permit gifts on a widespread basis as part of a systematic marketing or advertising program.

We will only say at this point that if the Department is correct, the beers provided by respondent here were unlawful under regulation 106. However, we reach the same result under a different analysis.

Although regulation 52, subdivision (b) arguably permits "trade spending [or sampling]" if the alcoholic beverage is a *gift*, regulation 52, subdivision (a) undeniably prohibits the practice if the alcoholic beverage is a *sample*, because samples may be given *only* to licensed persons. Thus, if the beers provided by Anheuser-Busch were samples, they were not permitted under regulation 52, subdivision (a).

Respondent candidly states that the beers purchased by it are *both* samples and gifts, but argues that the classification as a gift should prevail. We agree

that both terms might loosely be used to describe the beers, but in our view we are required to consider the more subtle shadings of meaning of the two terms.

Civil Code section 1146 defines a gift as "a transfer of . . . property, made voluntarily, and without consideration." (See also Webster's New Internat. Dict. (3d ed. 1993) p. 956 ["2: Something that is voluntarily transferred by one person to another without compensation."].) The beers here were so transferred, and respondents' position is certainly semantically supportable.[9]

On the other hand, a sample is defined by the same authority as "2a: a representative portion of a whole: a small segment or quantity taken as evidence of the quality or character of the entire group or lot." (Webster's New Internat. Dict., *supra*, at p. 2008.) A can or bottle of beer manufactured by a large brewery presumably is typical of the entire production and is certainly a sample under this definition. More tellingly, a further definition of "sample" is "[2]c(1): a trial package of a product distributed without cost to potential consumers." (*Ibid.*) This is *precisely* what was done here.

In the context of commercial activity the words "gift" and "sample" carry quite different meanings which are not interchangeable. A gift is given out of affection, respect, tradition, or a combination of the three. True, a gift may be given in the hope of currying favor. As Anheuser-Busch argues, a gift may have a commercial purpose when given to a potential customer. However, even in such cases there is rarely an explicit desired quid pro quo, the gift need not have a direct relationship to the hoped-for response. A sample, by contrast, is offered as an inducement to purchase or otherwise acquire the product by enabling the recipient to test, taste, or try it. The desired response is not one of general goodwill or even the giving of a reciprocal gift, but a specific action on the part of the recipient of the sample: buying the product because the sample has convinced the recipient of the product's quality. The connotations of "sample" are commercial, rather than social, and this distinguishes it from "gift" in common understanding.

---

[9]It might be argued that the beers offered by respondent were actually *exchanged* for the beers then being consumed by the customers. However, the Department's position has always been that respondent was "giving away" beer and this is the theory on which the entire case has been argued. We note that if respondent does not have a retailing license, it presumably could not legally exchange its beer for valuable consideration, which would raise an entirely new set of issues. We choose to accept the implicit understanding that respondent did not really want the customers' beers, but simply wanted the customers to stop drinking whatever brand they had purchased, and start drinking respondent's product.

Regulation 52, subdivision (a) itself clearly reflects this construction of the term "sample." The rule permits samples to be given "for the sole purpose of permitting [the recipients] to determine the grade, type, and quality of the alcoholic beverages," and restricts the giving of samples to those who have not previously purchased the product. Thus, the Department clearly recognizes and defines "samples" as products which are given as a commercial tactic.

Under this analysis, the beers provided by Anheuser-Busch were not gifts; they were samples. Anheuser-Busch did not desire the general goodwill of the patrons to whom it provided bottles or cans of its product; it wanted them to try the beer, like it, and buy it in the future. This fits both common understanding of "sample" and the Department's understanding as set forth in regulation 52, subdivision (a). Since regulation 52, subdivision (a) allows samples to be given only to other licensed persons or entities, the practice of "trade sampling" by giving sample beers to consumers is not permitted.

Respondent urges strenuously that both subdivisions (a) and (b) of regulation 52 are actually intended to cover what may generically be called "giveaways" of alcoholic beverages, with the distinction being that subdivision (a) restricts and regulates the giving of beverages to other licensees, while subdivision (b) governs giveaways to members of the public. We cannot agree, because the Department described the subdivision (a) beverages as "samples" and the subdivision (b) beverages as "gifts." We must assume that the difference reflects an intentional distinction. (See *Roe* v. *Superior Court* (1990) 224 Cal.App.3d 642, 646 [273 Cal.Rptr. 745].) If the Department had meant to authorize the routine and widespread giving of samples by subdivision (b) of regulation 52, surely it would have made this clear rather than muddling the issue by employing the term "gift" instead. Although respondents argue strenuously that subdivision (b) is intended to authorize the giving of samples to consumers, and that subdivision (a) applies only to samples given to retailers, two further points may be made in rebuttal. First, regulation 52, subdivision (b), by its terms, simply does not apply exclusively to consumers so as to create a clear contradistinction to subdivision (a). Second, regulation 52, subdivision (a) flatly states that "[s]amples . . . may be given *only* to licensees or employees or agents of licensees who are eligible to purchase alcoholic beverages."[10] (Italics added.) Respondents would have us amend this provision by reading into the subdivision the words "*or consumers*; see subdivision (b)." We decline to do so.

Furthermore, there is no visible reason why either the Legislature or the Department should take a more liberal view of what respondent calls "consumer samples" than of "licensee samples." ■ As the Department repeatedly reminds us, the primary point of the whole Alcoholic Beverage

---

[10]It also imposes other limitations and stringent recordkeeping obligations on the giver.

Control Act (§ 23000 et seq.) is to protect "the safety, welfare, health, peace, and morals of the people of the State." (§ 23001.) The legislative goal has traditionally been recognized as the promotion of temperance.[11] (*Walsh* v. *Kirby* (1974) 13 Cal.3d 95, 100 [118 Cal.Rptr. 1, 529 P.2d 33].) ▮▮▮ Allowing Anheuser-Busch to give alcohol to consumers without restriction, with the obvious intent of encouraging additional consumption, would be contradictory to the Department's *raison d'être*.

Instead, we agree with the Department that, in the context of the entire regulatory scheme, subdivision (b) of regulation 52 can best be interpreted as applying only to friendly, social, or congratulatory gifts, such as a Christmas six-pack to a favored customer, or a bottle of champagne given to a sports champion. Such gifts, as we have noted, are prohibited only in connection with the sale of alcoholic beverages, not the distribution of such beverages, so that the examples just given remain permitted. However, such beverages are gifts, not samples. Respondent's beverages were samples, not gifts. Regulation 52, subdivision (b) does not validate the practice of "trade sampling."[12] As samples, the beers provided by Anheuser-Busch were unlawful under regulation 52, subdivision (a).

Although we decide the case against it, respondent Anheuser-Busch has other arguments which we will briefly discuss. First, it points out that the Legislature itself has authorized the giving of free alcoholic beverages to consumers in the context of on-premises tastings offered by wineries and breweries. (§§ 23356.1, 23357.3.) However, we do not think that this pleasant practice—which has as much to do with tourism as with drinking—can be equated with the mass distribution of free alcoholic beverages at other, unregulated locations. If anything, this argument suggests that consumer "samples" not specifically authorized by statute should be considered subject to departmental regulation (and thus prohibition) under the principle that explicit inclusion of one thing is the implicit exclusion of others.

Next, respondent complains that such a construction would result in a nullification of section 23386's express recognition that the giving of samples should be permitted. Not so. The section gives the Department the authority to regulate the giving of samples, which it has done by providing that only other licensees may receive samples of alcoholic beverages. Thus,

---

[11]This purpose was formerly codified in section 24749, which was repealed in 1994. However, since the entire regulatory structure remains in place, it must be assumed that the purpose remains of significant public importance. Given health concerns and the well-known toll taken by drunk drivers, certainly the current official public climate is not one of *encouraging* the consumption of alcohol.

[12]It occurs to us that the name of the practice concedes that it involves "samples."

a manufacturer such as Anheuser-Busch is free to give samples to a retailer with the aim of persuading the latter that its products are of high quality and should be stocked by the retailer. However, section 23386 cannot be read as reflecting any legislative intent that a licensee may give samples of alcoholic beverages to anyone it chooses. The Department has properly exercised the discretion given to it by the Legislature by deciding that wholesalers such as respondent may not give samples to general members of the public. There is no nullification of any legislative intent.

Respondents also place great stress upon the Department's unsuccessful effort to amend regulation 52, subdivision (b) to prohibit the giving of alcoholic gifts in connection with *either* the sale *or* the distribution of alcoholic beverages. The argument is that such an amendment would have been unnecessary had regulation 52, subdivision (b) permitted only casual social gifts, and that the Department should not be permitted to do by interpretation what it was not able to do by amendment.

The administrative record reflects that when the Department proposed to amend regulation 52, subdivision (b) to prohibit gifts of alcoholic beverages in connection with either the sale or distribution of such beverages, several trade groups expressed concern that this would invalidate the "customary and long-standing practice of a supplier purchasing a consumer a drink" or "the historical practice . . . of occasionally purchasing an alcoholic beverage for a prospective or existing customer." In rejecting the change, the Office of Administrative Law found the Department's justification and explanation for the changes inadequate. It also suggested that the proposed changes (as read in connection with regulation 106) might so limit the classes of permissible gifts as to contradict the apparent legislative recognition, in section 25600, subdivision (a), that some gifts by licensees must be deemed unobjectionable.

This argument is not without force, but in light of our conclusion that the beers in question were samples rather than gifts, it is not dispositive. We also note that the trade associations' description of the practice of trade sampling as an "incidental" or "occasional" purchase bears little resemblance to the orchestrated promotional activity shown by the record here. An Anheuser-Busch employee did not purchase a beer for a bar patron as an "incident" to a casual conversation; it sent its employees out *en masse* with the intent of introducing as many patrons as possible to its product. Thus, the practice which they argued should not be prohibited by the amendments was not precisely the practice which Anheuser-Busch carried out here.

In summary, we agree that it is difficult (1) to reconcile section 25600, subdivision (a)'s prohibition on gifts except as authorized by regulation with

the strict dollar limits of section 25600, subdivisions (b) and (c), and (2) to reconcile regulation 52, subdivision (b) with the broader proscriptions of regulation 106, and we again urge the Legislature, or the Department, or both, to attempt a wholesale clarification of what items may be given away by licensees, to whom, and in what manner. However, we are persuaded that the activity here involves samples rather than gifts, and that as the Department has exercised its rulemaking authority *not* to permit such samples to consumers, the practice was unlawful and the accusation should have been sustained.[13]

The petition for writ of review is granted. The order under review is annulled, and the matter is remanded to the Board for further proceedings consistent with this opinion.

Hollenhorst, Acting P. J., and Gaut, J., concurred.

A petition for a rehearing was denied June 8, 1999, and the petition of real party in interest for review by the Supreme Court was denied August 11, 1999. Baxter, J. and Kennard, J., were of the opinion that the petition should be granted.

---

[13]The last point discussed—that of the Department's inability to have regulation 52, subdivision (b) amended so that the impropriety of trade sampling in connection with the distribution of alcoholic beverages was clearer—may bear on the nature of the discipline which should be imposed on Anheuser-Busch if it proceeded in good faith. We do not decide the point, but merely refer it to the Board for consideration.