[S.F. No. 23063. In Bank. Apr. 11, 1974.]

FERNANDO G. FLORES, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
ART FALCON et al., Respondents.

**COUNSEL**

Felix Alfred Aycock, Jr., and Levy, Van Bourg & Hackler for Petitioner.

Evelle J. Younger, Attorney General, Elizabeth Palmer, Assistant Attorney General, N. Eugene Hill and Jeffrey L. Gunther, Deputy Attorneys General, for Respondents.

## OPINION

**TOBRINER, J.**—In 1971 the California Legislature established the Uninsured Employers Fund (Fund) to serve as an immediate source of funds for injured workmen whose employers have failed or refused either to obtain workmen's compensation insurance or to qualify as self-insurers. Under the newly adopted statutory scheme, if an uninsured employer[1] fails, within 10 days of an award, either to begin payments under the award or to post a sufficient bond, a worker may obtain payment from the state-financed Uninsured Employers Fund, which then is subrogated to the worker's claim, and proceeds directly against the employer. The sole question presented in the instant case concerns the proper scope of the Fund's payment to an entitled employee under the statutory scheme.

As discussed below, we have determined that the relevant statutory provisions require the Fund to pay an employee the *full* amount of the workmen's compensation award for which his employer would be liable, including those amounts—a 10 percent "penalty" and attorney's fees—assessed against the employer because of his wilful failure to secure compensation. Because the Workmen's Compensation Appeals Board (WCAB) reached a contrary conclusion in this case, we annul that decision and remand the matter to the board.

The facts in the instant case are not in dispute. The applicant, Fernando Flores, suffered an industrial injury while employed by Art Falcon. In the initial WCAB proceeding the referee found that the employer had wilfully failed "to secure the payment of compensation," that is, had wilfully failed to obtain workmen's compensation insurance or to qualify as a self-insurer (see Lab. Code, § 3700), and consequently, pursuant to Labor Code sections 4554 and 4555,[2] the referee increased the applicant's award by 10 percent and by the addition of attorney's fees. No one contests the finding that the employer was wilfully uninsured.

When the employer did not begin the payments required by the award

---

[1]For literary convenience, we shall use the term "uninsured employer" to refer to an employer who has failed either to secure workmen's compensation insurance or to qualify as a self-insurer.

[2]Section 4554 provides in relevant part: "In case of the willful failure by an employer to secure the payment of compensation, the amount of compensation otherwise recoverable for injury or death . . . shall be increased 10 percent."

Section 4555 provides in relevant part: "In case of failure by an employer to secure the payment of compensation, the appeals board may award a reasonable attorney's fee in addition to the amount of compensation recoverable."

All section references are to the Labor Code.

or post a bond within 10 days, the applicant petitioned for an order that the Fund pay the entire award. After the referee initially concluded that the full award should be paid from the Fund, the administrator of the Fund filed a petition for reconsideration, contending that the Fund was not liable for the portion of the award attributable to the 10 percent increase or the separate award of attorney's fees. The board granted reconsideration and, in an en banc decision, concluded that the Fund's contention was meritorious, relying on the specific language of a portion of section 3715, one of the newly enacted statutory provisions. The applicant now challenges that decision.

A brief review of the pre-1971 workmen's compensation procedure in cases involving uninsured employers will help place the new provisions in perspective. Prior to 1971, a worker who was injured while working for an uninsured employer was given the right both to seek compensation before the WCAB *and* to institute a civil suit for damages.[3] When a worker chose to proceed before the WCAB, Labor Code sections 4554 and 4555[4] provided that if the employer were shown to be "willfully uninsured" the worker's award was to be increased 10 percent and was to include an additional amount for attorney's fees.[5] Although an additional provision directed the agency to assist an unrepresented worker in collecting his award from the employer,[6] a significant problem under the pre-1971 practice was that injured workers of uninsured employers frequently faced long delays in obtaining payment and were often without funds during the critical period of their disability.

To remedy this situation, in 1971 the Legislature passed a bill creating an Uninsured Employers Fund and establishing a comprehensive proce-

---

[3]Before it was amended in 1971, section 3706 provided: "If any employer fails to secure the payment of compensation, any injured employee or his dependents may proceed against such employer by filing an application for compensation with the appeals board and, in addition, may bring an action at law against such employer for damages, as if this division did not apply."

[4]See footnote 2, *ante.*

[5]Normally attorney's fees are simply a lien on the applicant's basic award. (See § 4903, subd. (a).) Under section 4555, the additional award of attorney's fees is applicable whenever the employer fails to secure compensation, whether the failure is wilful or not. (*Goodhew Ambulance Service, Inc.* v. *Ind. Acc. Comm.* (1957) 22 Cal. Comp. Cases 201.)

[6]Before 1971, section 3715 provided in part: "If an employee is granted an award by the appeals board wherein the employer is found through evidence presented at an open hearing to be wilfully uninsured, and the employee is not represented by an attorney, the employee may request the director or his designated agents to assist in the collection of his award. No state or county agency, officer, or employee shall charge the *department* for any services rendered the employee in connection with

dure for the Fund's operation.[7] The key provisions of the new legislation are sections 3715 and 3716, and it is their interpretation which is directly at issue in the instant case.

Section 3715 provides in relevant part: "Any employee whose employer has failed to secure the payment of compensation as required by this division . . . may, in lieu of proceedings against his employer by civil action in the courts as provided in section 3706, file his application with the appeals board for compensation and the appeals board shall hear and determine such application for compensation in like manner as in other claims and *shall make such award to such claimant as he would be entitled to receive if such employer had secured the payment of compensation as required,* and such employer shall pay such award . . . or shall furnish to the appeals board a bond, in such an amount . . . as the appeals board requires, . . ." (Italics added.) Section 3716, in turn, provides that: "If the employer fails to pay such compensation . . . or fails to furnish such bond within a period of 10 days after notification of such award, *the award,* upon application by the person entitled thereto, *shall be paid by the Director of Industrial Relations from the Uninsured Employers Fund,* which fund is hereby created in the State Treasury . . . ." (Italics added.)[8]

The question presented here is whether "the award" that the Fund is to pay to a worker under section 3716 includes the 10 percent increase and additional attorney's fees that an uninsured employer has traditionally been obligated to pay. The Fund contends that the language of section 3715, providing that a claimant shall receive such award as he would be entitled to receive *"if such employer had secured the payment of compensation as required,"* precludes the inclusion of either a 10 percent increase or additional attorney's fees in any award ordered pursuant to that section. The Fund reasons that since the obligations imposed by sections 4554 and 4555 are only applicable if an employer *fails* to secure the payment of compensation, the additional items would not be part of an award if the employer *had* secured the payment of compensation; consequently, since the Fund's obligation under section 3716 is measured by the award

_____

such request, but a fee for services rendered, together with the sum of one hundred dollars ($100) shall be added to the award made by the appeals board."

[7]In addition to creating the Fund, the 1971 legislation altered the prior rule that a worker of an uninsured employer could both bring a civil suit and institute workmen's compensation proceedings; the new act provides that the worker can only pursue one of the alternative procedures, at the worker's choice. (See §§ 3706, 3715.)

[8]Section 3717 directs the Fund to "institute a civil action against such employer in the name of the state for the collection of such award."

authorized under section 3715, the Fund asserts that it cannot be required to pay either the 10 percent penalty or the additional attorney's fee award.

Under the interpretation suggested by the Fund, however, section 3715 would in effect impose a new, more restrictive limit on the award which a worker is entitled to obtain against an uninsured employer; we think it clear that the Legislature never intended to effect such a result. As noted earlier, the legislative purpose underlying the 1971 legislation was to provide additional protection for vulnerable employees; the enactment was not intended to relieve uninsured employers of obligations existing under prior law. In enacting section 3715, the Legislature did not explicitly repeal the provisions of sections 4554 and 4555 and, of course, our prior cases clearly indicate that all presumptions are against a repeal by implication. (See, e.g., *Ebert* v. *State of California* (1949) 33 Cal.2d 502, 509 [202 P.2d 1022]; *Rexstrew* v. *City of Huntington Park* (1942) 20 Cal.2d 630, 634 [128 P.2d 23].) Given the clear legislative purpose of the new legislation, our duty to harmonize its terms, if possible, with the more specific provisions of sections 4554 and 4555 (see, e.g., *County of Placer* v. *Aetna Cas. etc. Co.* (1958) 50 Cal.2d 182, 188-189 [323 P.2d 753]; *People* v. *Trieber* (1946) 28 Cal.2d 657, 661 [171 P.2d 1]), and the legislative mandate of liberal construction of workmen's compensation provisions in favor of the workmen § 3202, we conclude, as suggested by the WCAB referee in this case,[9] that the language of section 3715 relied upon by the Fund was intended by the Legislature simply to ensure that an employee of an uninsured employer receives no less than a similarly situated employee whose employer is insured.[10]

The Fund argues, however, that although the language of section 3715 noted above may not have been intended to relieve *an uninsured employer* of the obligations imposed by sections 4554 and 4555, such language does demonstrate that the Legislature only intended *the Fund* to bear a more limited burden, in effect treating the Fund as a workmen's compensation insurer and imposing upon it only the obligations that would have to be

---

[9]In his report on reconsideration the referee stated: "I submit that the language in Labor Code Sec. 3715, to-wit: 'shall make such award to such claimant as he would be entitled to receive if such employer had secured the payment of compensation as required' was meant to be no more than an admonition that such unfortunate employee receive *no less* than his more fortunate counterpart. In other words, it puts a *minimum* on what the employee is to receive, not a *maximum* on the culpable employer's liability. Were it otherwise, the Legislature would have repealed Labor Code Sec. 4554 and Labor Code Sec. 4555, which provide certain 'penalties' for non-insurance."

[10]Cf. *Select Base Materials* v. *Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672] ("[Legislative] purpose will not be sacrificed to a literal construction of any part of the act.")

borne if the employer had actually been insured. The terms of section 3715 make it clear, however, that the provision was intended to designate the duties of an uninsured employer and was not framed to apply only to the obligation of the Fund.

After describing the award to which an employee is entitled under its provisions, section 3715 explicitly declares that "such *employer* shall pay such award . . . or shall furnish . . . a bond, in such an amount . . . as the appeals board requires. . . ."( italics added); indeed, section 3715 makes no mention of the Fund or its obligations at all.[11] And section 3716, in prescribing the scope of the Fund's obligation, clearly indicates that such obligation is coextensive with that of the uninsured employer, declaring "[i]f the employer fails to pay such compensation . . . within a period of 10 days after notification of the award, the award, upon application by the person entitled thereto, shall be paid by the Director of Industrial Relations from the Uninsured Employers Fund . . . ." If these provisions had been drafted for the purpose of establishing a more limited obligation on the part of the Fund than that borne by the employer, as the Fund now suggests, we cannot believe that the Legislature would have structured the sections as it did.

Although the Fund additionally argues that, as a matter of policy, the limited money available to the Fund should be reserved for the payment of basic compensation awards rather than statutory "penalties," our response must be simply that that is not what the present statutory provisions dictate. As A. P. Herbert so unforgettably quipped: "If Parliament does not mean what it says it must say so." (Herbert, The Uncommon Law (6th ed. 1948) p. 313.)

Finally, the Fund argues that it is unfair, and inconsistent with the provisions of Government Code section 818,[12] to require it to pay the "penalty" assessments of sections 4554 and 4555 imposed because of the wrongful

---

[11]Moreover, the entire structure of section 3715 demonstrates that the provision was intended as a general statement of an employee's compensation rights vis-à-vis an uninsured employer. As noted above, the section first provides that "[a]ny employee whose employer has failed to secure the payment of compensation . . . may, in lieu of [instituting a] civil action in the courts . . ., file his application with the appeals board . . ."; the section then provides that the procedure to be followed by the appeals board in the case of uninsured employers parallels the procedure utilized for other claims, and concludes that the employer is liable for the award rendered by the appeals board.

[12]Government Code section 818 provides: "Notwithstanding any other provision of law, a public entity is not liable for damages awarded under Section 3294 of the Civil Code or other damages imposed primarily for the sake of example and by way of punishing the defendant."

conduct of the worker's employer. The Fund emphasizes that the state has done nothing wrong, but, on the contrary, has, through the establishment of the Fund, "generously" made additional resources available to injured employees. This argument reveals a basic misconception of the nature of the state's obligation under the recently enacted statutory scheme.

No one, of course, contends that the state or the Fund is guilty of any wrongdoing; the obligation arising under section 3716 is not imposed as a penalty for any misconduct by the state. Rather, the new statutory provisions merely establish the Fund as an immediate source of money to which an injured employee can resort when his employer is uninsured and fails to pay a compensation award; the statutory scheme contemplates that the Fund, having paid the employee's award as an initial matter, will then proceed against the employer and will recover the entire award from him. (See Lab. Code, §§ 3717, 3719.) Consequently, it is the employer, rather than the Fund, who must ultimately pay the additional penalties awarded because of the employer's failure to insure.

Although we recognize that in some cases the insolvency of uninsured employers will mean, as a practical matter, that the Fund will bear the entire financial burden of an award, we believe that is the inevitable consequence of the present statutory scheme.

In sum, we have concluded that the legislation establishing the Fund provides simply that if an employee is not able to obtain payment or the posting of an adequate bond within 10 days of an award, the Fund is to pay the entire award, become subrogated to the employee's claim, and proceed directly against the employer. Nothing in the legislation suggests either that the uninsured employer's obligations under prior law are to be reduced, or that the Fund is to pay the injured employee only a portion of the award which his employer is obligated to pay. In light of this conclusion, the board's decision in the instant case, absolving the Fund of any obligation to pay the portion of the award attributable to the 10 percent increase or additional attorney's fees, was in error.

The decision of the Workmen's Compensation Appeals Board is annulled and the case is remanded to that board for proceedings consistent with this opinion.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.