[No. C006794. Third Dist. Apr. 16, 1990.]

JOHN F. HENNING, Individually and as Executive Secretary-Treasurer, etc., et al., Petitioners, v.
DIVISION OF OCCUPATIONAL SAFETY AND HEALTH, Respondent.

748

**COUNSEL**

Donald C. Carroll, Charles P. Scully II and Frances C. Schreiberg for Petitioners.

Michael D. Mason, Ron E. Medeiros, A. Margaret Cloudt and Nicholas Champlin for Respondent.

**OPINION**

**SPARKS, J.**—This case involves a challenge to administrative regulations promulgated by the respondent Division of Occupational Safety and Health (Division) dealing with asbestos-related work. The central dispute turns on the interplay between two statutes governing asbestos-related work. The first, Labor Code section 6501.5, mandates that "any employer or contractor who engages in asbestos-related work" of a defined area "shall register with the [D]ivision." The second, Business and Professions Code section 7058.5, subdivision (a), provides that "no contractor shall engage in asbestos-related work" of the defined area "unless the qualifier for the license passes an asbestos certification examination." Exempted from this certification requirement, however, are "contractors involved with the installation, maintenance, and repair of asbestos cement pipe or sheets, vinyl asbestos floor materials, or asbestos bituminous or resinous materials." The chal-

lenged regulation purports to relieve these same contractors exempted from examination from the duty to register with the Division as well. It provides that "[a]ny contractor who is not required to take an asbestos certification examination pursuant to Business and Professions Code Section 7058.5(a) is not required to register pursuant to this article." (Cal. Code Regs., tit. 8, § 341.6, subd. (a).)

Seeking to invalidate this regulation and others adopted by the Division governing employers and contractors engaging in asbestos-related work, the petitioners (who appear both in their individual capacities and as representatives of various labor organizations) have invoked our original jurisdiction in order to obtain a peremptory writ of mandate directing the Division to vacate the regulations. (See *Bendix Forest Products Corp.* v. *Division of Occupational Saf. & Health* (1979) 25 Cal.3d 465, 469 [158 Cal.Rptr. 882, 600 P.2d 1339]; Lab. Code, § 6308 [subsequent undesignated section references are to this code].) We issued an alternative writ, to which the Division filed opposition and the petitioners filed replication. In the first cause of action, the petitioners claim that only the Occupational Safety and Health Standards Board (Standards Board) may issue regulations concerning asbestos-related work and that the Division is therefore precluded from adopting any regulations at all in its own behalf on that subject. In the second cause of action, they allege that the amendment of section 341.6, subdivision (a) of title 8 of the California Code of Regulations to exempt certain contractors from the duty to register is void because it is in excess of the Division's legal powers and is contrary to law. Although we conclude that the predicate of the first cause of action is incorrect, we find the second cause of action to be meritorious, holding the amendment to be in conflict with section 6501.5. We shall accordingly issue the peremptory writ.

### BACKGROUND

As part of the California Occupational Safety and Health Act of 1973 (Stats. 1973, ch. 993; see § 6300), the Legislature added chapter 6, entitled Permit Requirements, (§ 6500 et seq.) to division 5 (Safety in Employment) of the Labor Code. These provisions declared that certain occupations or places of employment involved such a substantial risk of injury that an employer would be required to obtain a permit from the Division before any work could be done. In order to obtain the permit, the employer would have to demonstrate familiarity with potential hazards and the safety standards, as well as manifest a willingness to abide by the safety standards. (§§ 6500, 6501, 6502.)

In 1985, the Legislature directed its attention to problems in asbestos-related work.[1] As part of a package of urgency legislation, the Legislature added several provisions to chapter 6 of part 1 of division 5 of the Labor Code relating to asbestos. (Stats. 1985, ch. 1587, § 9 et seq., p. 5875 et seq.) Most pertinently, the new section 6501.5 established a system by which "any employer or contractor who engages in asbestos-related work, as defined in Section 6501.8, and which involves 100 square feet or more of surface area of asbestos-containing material, shall register with the division." (§ 6501.5.) Under this section an employer, among other things, was required to provide health insurance coverage to cover the cost of medical examinations and monitoring, to train and certify all employees with the training mandated by law and the applicable regulations, to be proficient with and have the necessary equipment to perform the asbestos-related work safely, to provide written notice to the Division for each separate job, and to post the location of the work with a sign reading, "Danger—Asbestos. Cancer and Lung Hazard. Keep Out." (§ 6501.5, subds. (a)(2), (a)(3), (a)(4), (b), (c).) When an employer applicant met the statutory criteria, the Division was authorized to "grant registration based on a determination that the employer has demonstrated evidence that the conditions, practices, means, methods, operations, or processes used, or proposed to be used, will provide a safe and healthful place of employment." (§ 6501.5.)

Among the minimum criteria enumerated by the Legislature for "every employer" in order to obtain registration was the requirement that "[i]f the employer is a contractor, the contractor shall be certified pursuant to Section 7058.5 of the Business and Professions Code." (6501.5, subd. (a)(1).) As used in this chapter, the term "employer" includes the state and its agencies, specified local public agencies and every person who has any natural person in service. (§§ 3300, 6304. See also § 3301.) The word "person," in turn, includes "an individual, firm, voluntary association, or a public, quasi public, or private corporation." (§ 3210.) Thus, under this legislation, registration with the Division was required for virtually everyone involved in asbestos-related work of the defined square footage. Indeed, the Legislature expressly declared that "[n]o entity shall be exempt from registration." (§ 6508.5.)

---

[1] Section 6501.8, as enacted, provided, " 'asbestos-related work' means any activity which by disturbing asbestos-containing material may release asbestos fibers and which is not related to the manufacture of asbestos-containing products." (Stats. 1985, ch. 1587, § 12, p. 5876.) This definition was modified by 1986 amendments to its current form: " '[A]sbestos-related work' means any activity which by disturbing asbestos-containing construction materials may release asbestos fibers into the air and which is not related to its manufacture, the mining or excavation of asbestos-bearing ore or materials, or the installation or repair of automotive materials containing asbestos." To keep from repeating this lengthy definition ad nauseam, we note that wherever statutes or regulations use the expression asbestos-related work, it is defined in these terms and also includes the requirement that more than 100 square feet of asbestos-containing material be involved.

By the same bill that enacted several sections in the Labor Code relating to asbestos, the Legislature also added section 7058.5 to the Business and Professions Code. (Stats. 1985, ch. 1587, § 3, p. 5871.) This statute imposed the requirement that "[o]n and after January 1, 1987, no contractor shall engage in asbestos-related work, as defined in Section 6501.8 of the Labor Code, which involves 100 square feet or more of surface area of asbestos containing materials, unless the qualifier for the license passes an asbestos certification examination."[2] (Bus. & Prof. Code, § 7058.5, subd. (a); Stats. 1987, ch. 930, § 4.) A contractor who fails to obtain certification when required is subject to civil and criminal penalties and to revocation of his license. (Bus. & Prof. Code, § 7158.) By virtue of these several code provisions, if an employer was also the contractor on a job involving asbestos-related work in an area of the prescribed size, he was required both to register with the Division and to be certified by the Contractors' State License Board. (§ 6501.5, subd. (a)(1); Bus. & Prof. Code, § 7058.5, subd. (a).)

In 1986, the Legislature tinkered a bit further with the asbestos problem. (Stats. 1986, ch. 1451, §§ 2,10.) It made modifications to both section 6501.5 and Business and Professions Code section 7058.5, subdivision (a), as well as to other provisions of law. To section 6501.5, the Legislature added current subdivision (f), imposing a duty upon the Division to propose a regulation concerning asbestos-related work to the Occupational Safety and Health Standards Board for review and adoption. We will quote this subdivision in its entirety in the part of the discussion to which it is relevant. The Legislature also amended Business and Professions Code section 7058.5, exempting from the certification examination of the Contractors' State License Board those contractors whose only asbestos-related work involves the installation, maintenance and repair of specified asbestos-containing construction materials. The amending paragraph reads: "No asbestos certification examination shall be required for contractors involved with the installation, maintenance, and repair of asbestos cement pipe or sheets, vinyl asbestos floor materials, or asbestos bituminous or resinous materials." (Bus. & Prof. Code, § 7058.5, subd. (a).) Significantly, the Legislature

---

[2] For purposes of the Contractors License Law (Bus. & Prof. Code, § 7000 et seq.), a contractor is generally defined as a builder. "The term contractor for the purposes of this chapter is synonymous with the term 'builder' and, within the meaning of this chapter, a contractor is any person, who undertakes to or offers to undertake to or purports to have the capacity to undertake to or submits a bid to, or does himself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith . . . . The term contractor includes subcontractor and specialty contractor." (Bus. & Prof. Code, § 7026.)

did not enact any parallel change in the requirement imposed upon contractors to register with the Division under section 6501.5.

To switch to the regulatory front, the Division promulgated a number of regulations in May 1987 in title 8 of the California Code of Regulations which related to the registration process. The only regulation whose substance is challenged is California Code of Regulations, title 8, section 341.6, subdivision (a) (Cal. Code Regs., tit. 8, § 341.6, subd. (a)), which originally provided, "An employer who will be engaging in asbestos-related work . . . shall apply for and obtain a registration from the Division prior to commencement of any such work. The registration shall be valid for one year after issuance by the Division." (Cal. Code Regs. Supp., Register 87, No. 22, p. 8.24.6.) At the same time, the Division also adopted California Code of Regulations, title 8, section 341.7 (Cal. Code Regs., tit. 8, § 341.7), dealing with the application form for registration and with registration renewal. Among other things, it provided that if the applicant was a contractor then the application must contain "proof of certification *if required* pursuant to Section 7058.5 of the Business and Professions Code." (Italics added.) The Division also added California Code of Regulations, title 8, section 341.9 (Cal. Code Regs., tit. 8, § 341.9). The exact substance of this section does not concern us; in general, it requires employers to give the Division a particular form of written notice under certain circumstances. (Cal. Code Regs. Supp., Register 87, No. 22, p. 8.24.6.)

On August 1, 1988, the Division gave notice it was filing "emergency" amendments to title 8 of the California Code of Regulations, sections 341.6 and 341.9 to be effective immediately. It is these regulatory amendments which are challenged in this writ proceeding. The Office of Administrative Law subsequently ratified the emergency status of the amendments in December 1988. (Cal. Code Regs., tit. 8, §§ 341.6 & 341.9.) By these amendments, the Division added the following as the new second sentence of title 8 of the California Code of Regulations, section 341.6, subdivision (a): "Any contractor who is not required to take an asbestos certification examination pursuant to Business and Professions Code Section 7058.5(a) is not required to register pursuant to this article." It is this part of the regulation which petitioners allege conflicts with the governing statute.

In its "Final Statement of Reasons" for this amendment, the Division stated: "Certain contractors are not required to obtain a certification for asbestos-related work from the Contractors' State License Board pursuant to Business and Professions Code section 7058.5. These are contractors engaged in the installation, maintenance, and repair of asbestos cement pipe or sheets, vinyl asbestos floor materials, or asbestos bituminous or resinous materials. The legislature has determined that such contractors, even though engaging in asbestos-related work as defined in Labor Code section

6501.8, need not take a certification examination, or otherwise comply with the certification requirements. [¶] This legislative determination that specific activities fall outside the need for certification has caused the Division to determine that registration is not necessary as well. [¶] Labor Code section 6501.5(a) requires the contractor to be certified. This assumes that the contractor would have to take a certification examination. Since Business and Professions Code section 7058.5 exempts these contractors from the certification requirement it follows that they need not also register."

As part of the 1988 amendments, the Division also added subdivision (e) to title 8 of the California Code of Regulations, section 341.6 specifying how the threshold of 100 square feet of asbestos-containing material was to be computed in certain instances. Finally, the Division amended title 8 of the California Code of Regulations, section 341.9 to permit oral notice of operations under certain circumstances.

To complete the picture, in 1988 the Legislature added new section 7058.6 to the Business and Professions Code, operative on July 1, 1989. (Stats. 1988, ch. 1003, § 1.5.) In general, this new statute directed the Contractors' State License Board to require proof of current registration with the Division under section 6501.5 before issuing an asbestos certification to a contractor. It reads in pertinent part: "The board shall not issue an asbestos certification, as required by Section 7058.5, unless the contractor is registered with the Division of Occupational Safety and Health of the Department of Industrial Relations pursuant to Section 6501.5 of the Labor Code." (Bus. & Prof. Code, § 7058.6.) The statute also directed the license board to "notify all contractors who are so certified within 60 days of the effective date of this section that registration is required."

We examine the relationship of these parts of this regulatory and statutory mosaic in the second part of our discussion. But before interpreting those several provisions we must first resolve the contention that only the Occupational Safety and Health Standards Board is authorized to adopt regulations concerning asbestos-related work.

DISCUSSION

I

*The Division has authority to adopt the amended regulations.*

Instead of proposing the challenged amendments to the Standards Board for its adoption, the Division adopted them itself. In their first cause of action, the petitioners assert the Division's failure to propose the challenged amendments to the Standards Board for adoption by that entity as

required by section 6501.5, subdivision (f),[3] was an act in excess of the Division's power and authority and consequently was a void act. While conceding that the Division has general regulatory power conferred by the Labor Code (see §§ 60.5, 6307, 6308 and 6317), petitioners argue that the highly specific provisions of subdivision (f) of section 6501.5 preempt the Division's general powers to adopt regulations. This argument reads too much into subdivision (f).

This subdivision charges the Division with proposing "*a* regulation" (italics added) protecting the health and safety of employees engaged in asbestos-related work. The subdivision does not purport to deal with the application process or cost-savings regulations or the streamlining of administrative procedures. Rather, it mandates specific elements for the proposed regulation which, although we are not concerned with their substance, in essence carry out the requirements of subdivisions (a)(3), (b)(4), and (b)(5) of section 6501.5. The petitioners assert without any support that these elements are "non-exhaustive." Thus, in their view apparently *any* regulation "concerning" asbestos-related work (such as the challenged regulations) can be adopted only by the Standards Board. The subdivision cannot be read that way. If these specified elements were indeed merely illustrative and nonexhaustive, it would be superfluous for subdivision (f) to add a second paragraph, as it does, further directing the Division to propose "*a* regulation" (italics supplied) to the Standards Board "specifying sampling methodology for use in taking air samples" since surely such a regulation would be within the ambit of the first paragraph because it "concerns" asbestos-related work.

By its terms, subdivision (f) is restricted to proposals for safety and health standards governing asbestos-related work. We agree with the Division that the "specificity of the criteria enumerated in section 6501.5(f) clearly calls for a detailed and comprehensive safety and health standard to be contrasted with administrative regulations intended to govern the relations between [the Division] and the employer community." Such a construction is in

---

[3] Subdivision (f) of section 6501.5 provides: "Not later than January 1, 1987, the [Division] shall propose to the Occupational Safety and Health Standards Board for review and adoption a regulation concerning asbestos-related work, as defined in Section 6501.8, which involves 100 square feet or more of surface area of asbestos-containing material. The regulation shall protect most effectively the health and safety of employees and shall include specific requirements for certification of employees, supervisors with sufficient experience and authority to be responsible for asbestos-related work, and a qualified person who shall be responsible for scheduling any air sampling, for arranging for calibration of the air sampling equipment and for analysis of the air samples . . . , for conducting respirator fit testing, and for evaluating the results of the air sampling. [¶] The [Division] shall also propose a regulation to the Occupational Safety and Health Standards Board for review and adoption specifying sampling methodology for use in taking air samples."

accord with section 142.3, which declares that the Occupational Safety and Health Standards Board is the "only agency in the state authorized to adopt occupational safety and health standards." Thus, since subdivision (f) contemplates only particular regulations to be proposed by the Division and adopted by the Standards Board, nothing divests the Division of its general power to adopt in its own right the challenged regulations as an exercise of its administrative and enforcement powers under the Labor Code. Consequently, the Division did not violate the terms of subdivision (f) when it promulgated regulations to implement the asbestos registration process.

## II

*The regulation exempting contractors from the duty to register conflicts with the governing statute.*

The petitioners' second cause of action is restricted to the amendment to title 8 of the California Code of Regulations, section 341.6, subdivision (a). They claim this amendment exempting certain contractors from registration under section 6501.5 (those who have been excused from certification under Bus. & Prof., Code, § 7058.5) was an action in derogation of section 6501.5 because that statute contains no such exemption.

We shall shortly recapitulate the substance of the various statutory and regulatory provisions. First, however, we note our standard of review of the Division's action. According to Government Code section 11342.2, "[w]henever by the express or implied terms of any statute a state agency has authority to adopt regulations to implement, interpret, make specific or otherwise carry out the provisions of the statute, no regulation adopted is valid or effective unless [1] consistent and not in conflict with the statute and [2] reasonably necessary to effectuate the purpose of the statute."

By virtue of the first of the two criteria for regulatory validity in this statute,[4] the rulemaking authority of the agency is circumscribed by the substantive provisions of the law governing the agency. For that reason we must first look to the law governing the agency promulgating the regulation. "The task of the reviewing court in such a case is to decide whether the [agency] reasonably interpreted [its] legislative mandate. . . . Such a limited scope of review constitutes no judicial interference with the administrative discretion in that aspect of the rulemaking function which requires a high degree of technical skill and expertise. . . . [T]here is no agency

---

[4]There is also the requirement the promulgating agency employ fair procedures in the adoption of the regulation (*California State Employees' Assn.* v. *Way* (1982) 135 Cal.App.3d 1059, 1065 [185 Cal.Rptr. 747]), but this criterion is not implicated in this case.

discretion to promulgate a regulation which is inconsistent with the governing statute. . . . Whatever the force of administrative construction . . . final responsibility for the interpretation of the law rests with the courts. . . . Administrative regulations that alter or amend the statute or enlarge or impair its scope are void . . . ." (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816-817 [201 Cal.Rptr. 165, 678 P.2d 378], italics, citations and internal quotation marks deleted.)

By contrast, the second standard of reasonable necessity for a regulation, which generally does implicate the agency's expertise, receives a much more deferential standard, essentially requiring only reasonability of the promulgating agency. ■ "In the review of *quasi-legislative* actions of administrative agencies, judicial review is limited to a determination whether the agency's action is arbitrary, capricious, lacking in evidentiary support, or contrary to procedures provided by law. . . ." (*International Business Machines* v. *State Bd. of Equalization* (1980) 26 Cal.3d 923, 931, fn. 7 [163 Cal.Rptr. 782, 609 P.2d 1], italics supplied and citations deleted; accord *California State Employees' Assn., supra* 135 Cal.App.3d at p. 1065.)

Although petitioners have disputed the adequacy of the Division's rationale for the amendments, its reasoning is not dispositive because we are not bound by an administrative agency's construction of its controlling statutes. What is at issue here is an interpretation of the governing statutes for occupational safety and health. That comes within our respectful but nondeferential standard of review. ■ "[W]hen the agency is not exercising a discretionary rule-making power, but [is instead] merely construing a controlling statute[,] [t]he appropriate mode of review . . . is one in which the judiciary. . . tak[es] ultimate responsibility for the construction of the statute, [although] accord[ing] great weight and respect to the administrative construction." (*International Business Machines, supra*, 26 Cal.3d at p. 931, fn. 7.) ■ As we further explained in California *Beer & Wine Wholesalers Assn.* v. *Department of Alcoholic Beverage Control* (1988) 201 Cal.App.3d 100 [201 Cal.App.3d 100, 247 Cal.Rptr. 60], "[w]hat deference should be accorded an administrative construction of a statute itself requires a judicial construction of the limits of the claimed source of rulemaking authority, whether that be the substantive provisions of an applicable statute or the statutory boundaries of a delegated power. . . . Where the language of the governing statute is intelligible to judges their task is simply to apply it, whether that be language of substantive limitation or the boundaries of a delegation of rulemaking authority. Where the intelligibility of the statutory language depends upon the employment of administrative expertise, which it is the purpose of a statutory scheme to invoke, the judicial role 'is limited to determining whether the [agency] has reasonably interpreted

the power which the Legislature granted it.'" (*Id.* at p. 107.) We held that no deference to the administrative interpretation was required because the meaning of the applicable language and its legislative history was accessible, and hence intelligible, to judges. (*Ibid.*) The same is true in this case. Consequently, should we find the regulation to be in conflict with the governing statutes, the reasons advanced by the Division to justify its promulgation, while of interest, cannot save the conflicting regulation. This settled, we at last come to the judicial task of divining legislative intent.

■ As we noted at length earlier, originally section 6501.5 required all employers and contractors to register with the Division, and as a condition of that registration all contractors had to be certified by the Contractors' State License Board (which paralleled Business and Professions Code section 7058.5's requirement that all asbestos-related contractors be certified). In the 1986 amendments, the Legislature threw a monkey wrench into the smooth meshing of the two statutes by exempting certain contractors from certification under Business and Professions Code section 7058.5 but leaving all contractors subject to registration under section 6501.5.

Petitioners argue that by purporting to exempt some contractors doing asbestos-related work from the registration requirements of section 6501.5, the Division has acted contrary to law. An administrative body, petitioners correctly note, has no authority to enact a regulation which conflicts with a statute; consequently, this offending regulation is void. ■ "Administrative regulations that violate acts of the Legislature are void and no protestations that they are merely an exercise of administrative discretion can sanctify them." (*Morris* v. *Williams* (1967) 67 Cal.2d 733, 737 [63 Cal.Rptr. 689, 433 P.2d 697].) ■ The Division retorts that its challenged regulation is consistent with the overall statutory scheme and is harmonious with the apparent legislative intent. It argues that a contractor exempt from certification would be caught in a "Catch-22" predicament: the exempted contractor would be required to register, a condition of which is to become certified. "Not only would the contractor be required to do something which was not mandated, but [the Division] would effectively dictate to the Contractors' State License Board which contractors would have to be certified pursuant to the Business and Professions Code and, as a result, effectively *nullify* the exemption provisions of Business and Professions Code § 7058.5. The Legislature certainly did not intend this result." Moreover, as the Division sees it, the exemptions contained in Business and Professions Code section 7058.5 reflect a clear legislative intent that certain types of asbestos work should not be subject to the certification process. Consequently, so its argument goes, "[i]t is a simple matter of common sense that if a contractor has to be certified before he can register the

Legislature intended the opposite to be true, to wit: if the contractor was not required to be certified, then registration is not required."

By this construction, the Division would harmonize the two statutes by importing an exception from one statute into another and thereby negate the clear mandate of the host statute. But the rule of harmony does not permit explicit and unqualified language of a statute to be ignored. ▇ Quite the opposite, it merely dictates that "[s]tatutory language should not be interpreted in isolation, but must be construed in the context of the entire statute of which it is a part, in order to achieve harmony among the parts." (*People* v. *Morris* (1988) 46 Cal.3d 1, 16 [249 Cal.Rptr. 119, 756 P.2d 843].) As Sutherland explains it, "[l]egislation never is written on a clean slate, nor is it ever read in isolation or applied in a vacuum. Every new act takes its place as a component of an extensive and elaborate system of written laws." (2A Sutherland, Statutory Construction (4th ed. 1984 rev.) § 53.01, p. 549.) In such a legal system, harmony and consistency are positive values "because they serve the interests of impartiality and minimize arbitrariness. Construing statutes by reference to others advances those values. In fact, courts have been said to be under a duty to construe statutes harmoniously where that can reasonably be done." (*Op. cit. supra*, at pp. 549-550.) It follows that the principle that related statutes should be construed harmoniously "is a restatement of the presumption against the implied repeal of statutes." (*Op. cit. supra*, § 51.01, p. 451.) If found to be in irreconcilable conflict, only the most recent statute can survive and the earlier one is deemed to have been repealed by implication. (*Estate of McGee* (1908) 154 Cal. 204, 207 [97 P. 299].) The rule of harmony then is designed to avert such an implied repeal. But its office is not to treat words of one statute as if they were useless surplusage. Thus, "[w]ords must be construed in context, and statutes must be harmonized both internally and with each other, to the extent possible. Interpretative constructions which render some words surplusage, defy common sense, or lead to mischief or absurdity, are to be avoided." (*California Mfrs. Assn.* v. *Public Utilities Com.* (1979) 24 Cal.3d 836, 844 [157 Cal.Rptr. 676, 598 P.2d 836], citations omitted.)

▇ Section 6501.5 mandates that all contractors who engage in asbestos-related work of a defined area "shall register with the division." Section 6508.5 further directs that "[n]o entity shall be exempt from registration." These statutes cannot be harmonized with the certification statute by disregarding that universal requirement and construing it as if it said that only some asbestos contractors must register. On its face, the challenged regulation purports to excuse what the statutes compel. Although camouflaged in language of statutory harmony, the Division's real contention is that the Legislature impliedly repealed the requirement that all contractors must

register when it adopted the certification exemption for some asbestos contractors in Business and Professions Code section 7058.5. But all presumptions are against a repeal by implication. (*Flores* v. *Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033].) Those presumptions cannot be overcome here.

■ "The presumption against implied repeal is so strong," the California Supreme Court has ruled, "that 'to overcome the presumption the two acts must be irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation. The courts are bound, if possible, to maintain the integrity of both statutes if the two may stand together.' There must be 'no possibility of concurrent operation.' Courts have also noted that implied repeal should not be found unless '. . . the later provision gives undebatable evidence of an intent to supersede the earlier. . . .' " (*Western Oil & Gas Assn.* v. *Monterey Bay Unified Air Pollution Control Dist.* (1989) 49 Cal.3d 408, 419-420 [261 Cal.Rptr. 384, 777 P.2d 157], citations, italics and some capitalization omitted.)

■ The Division cannot meet this test. The two statutes are not irreconcilable. Section 6501.5 does not require an exempted contractor to become certified as a condition of registration. It merely requires certification by the Contractors' State License Board when mandated by the terms of Business and Professions Code section 7058.5. Under its terms, section 6501.5 only mandates the contractor to be "certified pursuant to Section 7058.5 of the Business and Professions Code." (§ 6501.5, subd. (a)(1).) Thus, if Business and Professions Code section 7058.5 itself does not require certification, such as for the specified contractors, then neither does section 6501.5. In this context, the phrase "pursuant to" means "as required by." Indeed, this is precisely the construction the Division placed upon the statute in 1987 when it adopted a regulation requiring a contractor applicant to present "proof of certification *if required* pursuant to Section 7058.5 of the Business and Professions Code." (Cal. Code Regs., tit. 8, § 341.7, subd. (b)(1), italics added.)[5] This is the way the rule of harmony is intended to be applied: statutes are construed in a harmonious way such that all of the statutes' terms are given meaning and effect. But altering the meaning of

---

[5] The Division argues that this regulation was not prompted by a determination that registration would be required even if the contractor was exempted from the certification examination. Instead, it asserts that the regulation was adopted to dispel any confusion on the part of contractors who might otherwise have thought they were required to apply for a registration even though exempted from certification. This seems a odd construction of a regulation governing what the application form for registration shall contain. The regulation, in pertinent part, provides that "[t]he registration application form shall contain the following: [¶] (1) If a contractor, proof of certification if required pursuant to Section 7058.5 of the Business and Professions Code." If this were meant to tell exempted contractors that they need not apply for registration, it was a bizarre way to do it. (Cal. Code Regs, tit. 8, § 341.7, subd. (b)(1).)

one statute by ignoring some of its provisions is an exercise in disharmony and ultimately is an argument for implied repeal. Since the statutes may have concurrent operation, an argument based upon an implied repeal must be rejected. The Division's construction, rather than harmonizing the scheme for monitoring asbestos-related work, would change the statutory directive and impermissibly reduce its own regulatory authority. Such a self-imposed diminishment is improper. "An agency may not adopt a rule which diminishes its own statutory authority." (*In re Stanley* (1976) 54 Cal.App.3d 1030, 1036 [126 Cal.Rptr. 524, 128 Cal.Rptr. 829].)

Furthermore, "courts are especially reluctant to find an implied repeal of statutes that serve an important public purpose." (*Western Oil & Gas Assn. v. Monterey Bay Unified Air Pollution Control Dist., supra*, 49 Cal.3d 408, 419.) The regulation of contractors engaging in asbestos-related work of the kind governed by the statute is designed to foster the safety and health of workers and others who may be deleteriously affected by that work. It is for this reason, for example, that the Legislature directed that a "safety conference shall be held for all asbestos handling jobs prior to the start of actual work." (§ 6503.5.) The responsibility ensuring the health and safety of workers has been vested in the Division. The Contractors' State License Board, on the other hand, has a different mandate. Its legislative mandate is to oversee the investigation, classification, qualification and licensing of applicants for contractors' licenses. (Bus. & Prof. Code, §§ 7010, 7065.) In essence, the Contractors' State License Board has been entrusted with the duty to ensure that applicants possess the requisite skills, knowledge and training to perform the work while the Division has been commissioned to safeguard the health and safety of workers. Although these legislative directives may occasionally overlap, they are fundamentally disparate functions. Consequently, a certification by the Contractors' State License Board is not the equivalent of a registration by the Division and an exemption from one does not imply an exclusion from the other.

Finally, it cannot be said that the failure to make a parallel change in section 6501.5 in 1986 was an oversight. The Legislature did not simply forget about section 6501.5 when it amended Business and Professions Code section 7058.5. That year it made other changes to section 6501.5 by adding subdivision (f). Its failure to amend the section to conform to certification requirements of the Business and Professions Code can be interpreted only as reflecting its intent to leave the registration requirements unchanged. "The failure of the Legislature to change the law in a particular respect when the subject is generally before it and changes in other aspects are made is indicative of an intent to leave the law as it stands in the aspects not amended." (*Cumero* v. *Public Employment Relations Bd.* (1989) 49 Cal.3d

575, 596 [262 Cal.Rptr. 46, 778 P.2d 174], citations and internal quotation marks omitted.)

For all of these reasons, we conclude that the challenged portion of the regulation conflicts with the governing statute and is therefore void. Petitioners are accordingly entitled to a peremptory writ.

### DISPOSITION

The alternative writ, having served its purpose, is discharged. Let a peremptory writ of mandate issue directing respondent Division to treat as void and then repeal that part of the 1988 amendment to title 8 of the California Code of Regulations, section 341.6, subdivision (a) challenged in this proceeding.

Evans, Acting P. J., and DeCristoforo, J., concurred.