[No. B244436. Second Dist., Div. Five. Jan. 13, 2014.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS F. ROSALES, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION***]**

---

*Pursuant to California Rules of Court, rules 8.1100 and 8.1110, parts III.A.–D. and F.2. are not certified for publication. The remainder of the opinion is to be published.

## COUNSEL

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr., and David F. Glassman, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**TURNER, P. J.—**

## I. INTRODUCTION

A jury convicted defendant, Luis F. Rosales, of three counts of first degree robbery. (Pen. Code, §§ 211, 212.5, subd. (a).)[1] The jury further found firearm use allegations true as to each count. (§ 12022.53, subd. (b).) The trial court found defendant had a prior juvenile adjudication of a serious felony within the meaning of sections 667, subdivisions (b) through (i) and 1170.12. Defendant was sentenced to 30 years in state prison. We modify the oral pronouncement of judgment with respect to court facilities and court operations assessments. We affirm the judgment as modified. We direct that the abstract of judgment be amended upon remittitur issuance.

## II. THE EVIDENCE

Defendant committed three robberies of hotel lobby front desk clerks. Defendant was arrested at the scene of the third robbery. His loaded semiautomatic firearm was recovered. The recovered gun was introduced in evidence at trial. Surveillance video from the robberies showed defendant using a gun.

Margaret Haynes was the victim of the first robbery, which was charged in count 2. Ms. Haynes testified that on November 2, 2011, defendant pointed a gun at her and demanded money. Ms. Haynes was scared because she thought defendant would shoot her. He was holding the gun in a way that she could see it the whole time. When asked what the firearm looked like, Ms. Haynes said, "[L]ike a gun maybe the kind a policeman would carry." Ms. Haynes was not certain the gun in evidence was the one defendant used. But she also could not say it was *not* the gun defendant pointed at her. Ms. Haynes identified defendant in a photographic lineup. She said, "That's the guy that robbed [me] . . . ." Ms. Haynes also identified defendant at trial.

Erick Lopez was the victim of the second robbery, which was charged in count 3. On October 23, 2011, defendant pointed a gun at Mr. Lopez and demanded cash. Mr. Lopez was scared and nervous. Mr. Lopez did not know anything about guns. He did not know the difference between a revolver and a semiautomatic gun. But he had seen a gun with a cylinder in the front that revolves. Defendant's weapon was not that type. Mr. Lopez could not say for sure that the gun in evidence was the one defendant used. But Mr. Lopez

---

[1] Further statutory references are to the Penal Code unless otherwise noted.

testified the weapon looked like the gun pointed at him during the robbery. Mr. Lopez identified defendant in a photographic lineup as someone who looked like the suspect. Mr. Lopez identified defendant at trial.

Mohd Rahman was the victim of the third robbery, which was charged in count 1. The robbery occurred on November 2, 2011. At trial, Mr. Rahman identified defendant as the perpetrator. Defendant pointed a gun at Mr. Rahman and demanded money. Mr. Rahman was afraid. After Mr. Rahman complied, defendant began to walk away. However, two hotel guests stopped defendant and, following a struggle, detained him until police arrived. During the struggle, defendant said the person from whom he borrowed the gun would kill defendant if he did not return it. Mr. Rahman identified the gun in evidence as the one defendant used during the robbery.

### III.   DISCUSSION

#### A.–D.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

#### E.   CALCRIM No. 359

We asked the parties to brief the question whether it was error to instruct the jury on corpus delicti pursuant to CALCRIM No. 359. Here the jury was instructed pursuant to CALCRIM No. 359: "The defendant may not be convicted of any crime based on his out-of-court statement alone. You may only rely on the defendant's out-of-court statements to convict him if you conclude that other evidence shows that the charged crime was committed. [¶] That other evidence may be slight and need only be enough to support a reasonable inference that a crime was committed. [¶] The identity of the person who committed the crime and the degree of the crime may be proved by the defendant's statement alone. [¶] You may not convict the defendant unless the People have proved his guilt beyond a reasonable doubt." Defendant asserts CALCRIM No. 359 should not have been given. Defendant relies on *People v. Rivas* (2013) 214 Cal.App.4th 1410, 1427–1429 [155 Cal.Rptr.3d 403]. *Rivas* held CALCRIM No. 359 is confusing and should be reconsidered. We disagree with *Rivas* and find no instructional error.

In *People v. Rivas, supra,* 214 Cal.App.4th at page 1428, the Court of Appeal held the first two paragraphs of CALCRIM No. 359 correctly state the corpus delicti rule. The court took issue, however, with the third paragraph. The Court of Appeal held: "[T]he reference to identity in

---

*See footnote, *ante*, page 1254.

CALCRIM No. 359 presents a risk of confounding the jury by telling jurors that a defendant's inculpatory extrajudicial statements, taken alone, do not suffice to allow the jury to convict the defendant of a charged crime—and yet those statements, again taken alone, are entertainable to prove the defendant's 'identity [as] the person who committed the crime' (CALJIC No. 359, 3d par.), which to any juror can only mean the defendant's identity as the perpetrator, i.e., the guilty party. The instruction requires reconsideration." (214 Cal.App.4th at p. 1429, fn. omitted.)

The Court of Appeal noted the Supreme Court upheld a similar instruction, CALJIC No. 2.72, in *People v. Foster* (2010) 50 Cal.4th 1301, 1344–1345 and footnote 19 [117 Cal.Rptr.3d 658, 242 P.3d 105]. The Court of Appeal held: "We are not here concerned with CALJIC No. 2.72, whose validity was upheld in *Foster, supra*, 50 Cal.4th at page 1345. The wording of CALJIC No. 2.72 is quite different; the version considered in *Foster* provided: ' "No person may be convicted of a criminal offense unless there is some proof of each element of the crime independent of any admission made by him outside of this trial. [¶] The identity of the person who is alleged to have committed a crime is not an element of the crime nor is the degree of the crime. Such identity or degree of the crime may be established by an admission." ' (*Foster, supra*, at pp. 1344–1345, fn. 19, italics omitted.) CALJIC No. 2.72 explains the role of identity satisfactorily, i.e., that an individual's identity is not an element of a crime (*Foster, supra*, at p. 1345), but CALCRIM No. 359 does not. As Carrillo argues in a supplemental letter brief this court requested, 'It may well be that in the third paragraph of CALCRIM [No.] 359 the drafters intended simply to convey the idea that identity is not part of the corpus delicti rule which requires corroboration. But they did so in a most unfortunate way.' " (*People v. Rivas, supra*, 214 Cal.App.4th at p. 1429, fn. 8.) Ultimately, in *Rivas*, the Court of Appeal concluded the instructional error was harmless. (*Id.* at pp. 1429–1430.) Other than the harmless error discussion, defendant adopts the foregoing analysis in *Rivas*.

We respectfully disagree with defendant's assertion that CALCRIM No. 359 incorrectly states California law. We review CALCRIM No. 359 to determine whether it correctly states the law. (*People v. Bland* (2002) 28 Cal.4th 313, 332 [121 Cal.Rptr.2d 546, 48 P.3d 1107]; *People v. Kelly* (1992) 1 Cal.4th 495, 525 [3 Cal.Rptr.2d 677, 822 P.2d 385].) We consider the specific language and the instruction in the context in which it was given. (*People v. Musselwhite* (1998) 17 Cal.4th 1216, 1248 [74 Cal.Rptr.2d 212, 954 P.2d 475]; *People v. Kelly, supra*, 1 Cal.4th at pp. 525–526.) Our Supreme Court has explained: " 'When we review challenges to a jury instruction as being incorrect or incomplete, we evaluate the instructions given as a whole, not in isolation. [Citation.]' " (*People v. Moore* (2011) 51 Cal.4th 1104, 1140 [127 Cal.Rptr.3d 2, 253 P.3d 1153], quoting *People v. Rundle* (2008) 43 Cal.4th 76, 149 [74 Cal.Rptr.3d 454, 180 P.3d 224], disapproved on a different point in *People v. Doolin*

(2009) 45 Cal.4th. 390, 421, fn. 22 [87 Cal.Rptr.3d 209, 198 P.3d 11].) We ask whether there is any reasonable likelihood the jury was confused and misapplied the instruction. (*People v. Bland, supra,* 28 Cal.4th at p. 332; *People v. Harrison* (2005) 35 Cal.4th 208, 252 [25 Cal.Rptr.3d 224, 106 P.3d 895]; *People v. Kelly, supra,* 1 Cal.4th at p. 525.)

■ It is well established that some evidence independent of a defendant's out-of-court confession or admission must be introduced to show that a crime was committed by someone. (*People v. Ledesma* (2006) 39 Cal.4th 641, 721 [47 Cal.Rptr.3d 326, 140 P.3d 657]; *People v. Alvarez* (2002) 27 Cal.4th 1161, 1168–1169 [119 Cal.Rptr.2d 903, 46 P.3d 372].) As our Supreme Court explained in *Alvarez*: "In every criminal trial, the prosecution must prove the corpus delicti, or the body of the crime itself—i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause. In California, it has traditionally been held, the prosecution cannot satisfy this burden by relying *exclusively* upon the extrajudicial statements, confessions, or admissions of the defendant. [Citations.]" (*Ibid.*; see *People v. Jablonski* (2006) 37 Cal.4th 774, 825 [38 Cal.Rptr.3d 98, 126 P.3d 938].) In *People v. Ledesma, supra,* 39 Cal.4th at page 721, our Supreme Court explained the purpose of the rule: "The principal purpose of the corpus delicti rule is to ensure that a defendant is not convicted of a crime that never occurred. (*People v. Carpenter* (1997) 15 Cal.4th 312, 394 [63 Cal.Rptr.2d 1, 935 P.2d 708][, superseded by statute on another ground as noted in *People v. Friend* (2009) 47 Cal.4th 1, 87 [97 Cal.Rptr.3d 1, 211 P.3d 520]]; see *People v. Jennings* [(1991)] 53 Cal.3d 334, 368 [279 Cal.Rptr. 780, 807 P.2d 1009].) That purpose is fulfilled by the admission of evidence sufficient to establish that the crime occurred." (Accord, *People v. Foster, supra,* 50 Cal.4th at pp. 1344–1346.) It is also well established that a defendant's inculpatory out-of-court statements *may,* however, be relied upon to establish his or her identity as the perpetrator of a crime. (*People v. Howard* (2010) 51 Cal.4th 15, 36–37 [118 Cal.Rptr.3d 678, 243 P.3d 972]; *People v. Ledesma, supra,* 39 Cal.4th at p. 721.) This is because the perpetrator's identity is not part of the corpus delicti. (*People v. Valencia* (2008) 43 Cal.4th 268, 297 [74 Cal.Rptr.3d 605, 180 P.3d 351]; *People v. Ledesma, supra,* 39 Cal.4th at p. 721; *People v. Wright* (1990) 52 Cal.3d 367, 404 [276 Cal.Rptr. 731, 802 P.2d 221], disapproved on a different point in *People v. Williams* (2010) 49 Cal.4th 405, 459 [111 Cal.Rptr.3d 589, 233 P.3d 1000].)

■ CALCRIM No. 359, like CALJIC No. 2.72, clearly so states. The corpus delicti rule is stated in the first two paragraphs of CALCRIM No. 359. The law concerning proof of identity by a defendant's extrajudicial statements is correctly stated in the third paragraph. There is no danger a jury will be unable to separate the two rules any more than in CALJIC No. 272, which has been approved by our Supreme Court in *Foster*. As noted, CALJIC No. 2.72 states in part: "The identity of the person who is alleged to have

committed a crime is not an element of the crime [nor is the degree of the crime]. The identity [or degree of the crime] may be established by [a] [an] [confession] [or] [admission]." CALCRIM No. 359 states with greater precision and economy of language, "The identity of the person who committed the crime [and the degree of the crime] may be proved by the defendant's statement[s] alone." CALCRIM No. 359 correctly states the law. (Cf. *People v. Foster, supra,* 50 Cal.4th at pp. 1344–1345; *People v. Ledesma, supra,* 39 Cal.4th at p. 721.) There was no reasonable likelihood the jury was confused and misapplied the instruction. Finally, CALCRIM No. 359 reminds the jury that the accused may not be convicted unless the prosecution proves guilt beyond a reasonable doubt. CALJIC No. 2.72, which was approved by our Supreme Court in *Foster,* contains no such reminder.

Here, in any event, any error would have been harmless. (*Chapman v. California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 87 S.Ct. 824]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [299 P.2d 243].) Defendant's only extrajudicial statement was that he would be killed if the gun was not returned to its owner. This extrajudicial statement was made while defendant was wrestled to the ground by two hotel guests on November 2, 2011. There was overwhelming evidence defendant was the man who committed the robberies. He was positively identified by persons present at all three robberies. Videos of all three robberies were shown to the jury.

### F. Sentencing Errors

#### 1. Presentence conduct credit

The trial court gave defendant 337 days of credit for time actually served in custody prior to the imposition of judgment. The trial court also gave defendant 50 days of conduct credit pursuant to section 2933.1, subdivision (c). We asked the parties to address the effect of the October 1, 2011 amendments to section 4019 on presentence conduct credit awards. (Stats. 2011, ch. 15, § 482.) These amendments were part of the 2011 realignment legislation addressing public safety.

The present provisions of section 4019, subdivisions (b), (c) and (f) grant an accused four days of conduct credit for every four days actually served. Section 4019, as effective October 1, 2011, makes no reference to the more restrictive grant of presentence conduct credits in section 2933.1, subdivision (c) which states: "Notwithstanding Section 4019 or any other provision of law, the maximum credit that may be earned against a period of confinement in, or commitment to, a county jail, industrial farm, or road camp, or a city jail, industrial farm, or road camp, following arrest and prior to placement in the custody of the Director of Corrections, shall not exceed

15 percent of the actual period of confinement for any person specified in subdivision (a)." Section 2933.1, subdivision (c) limits presentence conduct credits to 15 percent in cases where the defendant is convicted of a violent felony within the meaning of section 667.5, subdivision (c). Robbery is a violent felony. (§ 667.5, subd. (c)(9); *In re Coley* (2012) 55 Cal.4th 524, 531 [146 Cal.Rptr.3d 382, 283 P.3d 1252].) In addition, any offense in which the accused uses a firearm within the meaning of section 12022.53 is a violent felony. (§ 667.5, subd. (c)(22); *People v. Robinson* (2012) 208 Cal.App.4th 232, 256 [145 Cal.Rptr.3d 364].) Both of these definitional provisions of a violent felony, section 667.5, subdivision (c)(9) and (22), apply to defendant, who used a firearm during the robberies.

■ The October 1, 2011 adoption of section 4019, subdivisions (b), (c) and (f) was not intended to repeal the less generous presentence conduct provisions of section 2933.1, subdivision (c). Section 4019 makes no reference to section 2933.1, subdivision (c). Therefore, any repeal necessarily would have been by implication. Repeals by implication are disfavored. (*People v. Siko* (1988) 45 Cal.3d 820, 824 [248 Cal.Rptr. 110, 755 P.2d 294] ["As a general rule of statutory construction, of course, repeal by implication is disfavored."]; *Flores v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 171, 176 [113 Cal.Rptr. 217, 520 P.2d 1033] ["[A]ll presumptions are against a repeal by implication."].) Our Supreme Court has explained: "Absent an express declaration of legislative intent, we will find an implied repeal 'only when there is no rational basis for harmonizing the two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " (*Garcia v. McCutcheon* (1997) 16 Cal.4th 469, 476–477 [66 Cal.Rptr.2d 319, 940 P.2d 906], quoting *In re White* (1969) 1 Cal.3d 207, 212 [81 Cal.Rptr. 780, 460 P.2d 980].)

■ First, there is a rational basis for harmonizing sections 4019, subdivisions (b), (c) and (f) and 2933.1, subdivision (c). Violent felonies are more serious and logically warrant greater periods of incarceration. Nonviolent felonies, some of which result in county jail sentences pursuant to section 1170, subdivision (h)(2) and involve less serious crimes, result in greater credits. Second, the two presentence conduct credits provisions are not irreconcilable, clearly repugnant and so inconsistent that the two cannot operate concurrently. There are two distinct presentence conduct credits at issue here. The first is for offenders who do not commit violent felonies. The second is for offenders who commit violent felonies. These two sentencing schemes operate concurrently depending on whether the offense is specified in section 667.5, subdivision (c). (We need not discuss § 2933.2, subd. (c), which prohibits presentence credits for murderers.) Thus, section 2933.1, subdivision (c) has not been expressly or impliedly repealed. The trial court correctly gave defendant only 50 days of conduct credit.

2.   Other errors*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## IV.   DISPOSITION

The oral pronouncement of judgment is modified to impose a $30 court facilities assessment and a $40 court operations assessment as to each count. (Gov. Code, § 70373, subd. (a); Pen. Code, § 1465.8, subd. (a)(1).) The abstract of judgment must also be amended to reflect $28 in penalty assessments on the $10 local crime prevention programs fine as set forth in the unpublished portion of this opinion. (Pen. Code, § 1202.5, subd. (a).) In all other respects, the judgment is affirmed.

Kriegler, J., concurred.

**MOSK, J.,** Concurring and Dissenting.—I dissent in part and concur in part.

To consider a hotel lobby open to the public as an "inhabited dwelling house" for purposes of Penal Code section 212.5, subdivision (a) expands the meaning of the term beyond the Legislature's intent. The purpose of section 212.5—to provide "heightened protection to the residence" (*People v. Cruz* (1996) 13 Cal.4th 764, 775 [55 Cal.Rptr.2d 117, 919 P.2d 731])—is based on factors unique to a residence or living quarters, including "to protect the peaceful occupation of one's residence," (*ibid.*)[1] that a person is more likely to react violently to a crime in a residence or living quarters (*Cruz*, at p. 775), and victims within a confined dwelling space are more vulnerable (see *People v. Fleetwood* (1985) 171 Cal.App.3d 982, 987 [217 Cal.Rptr. 612]).

I acknowledge that any space inside a hotel literally could be said to be within an inhabited dwelling. But, under the majority decision, the shops or ballrooms in major hotels would be considered part of an inhabited dwelling and therefore covered by Penal Code section 212.5, subdivision (a). These days, many structures have mixed uses. The top floors of buildings are often composed of condominiums, hotel rooms, or apartments, while the bottom floor or floors contain stores, offices, markets, and restaurants, all of which are "integral part[s] of the building" (*People v. Wilson* (1989) 209 Cal.App.3d 451, 453 [256 Cal.Rptr. 808]) and thus under the majority decision would be

---

*See footnote, *ante*, page 1254.

[1] "For a man's house is his castle, *er domus sua cuique tutissimum refugium.*" (Sir Edward Coke quoted in Bartlett, Familiar Quotations (16th ed. 1992) 152, fn. omitted; 3 Wharton's Criminal Law (15th ed. 2013) § 325 ["Burglary has always been regarded as a serious crime because of the ancient notion that a man's home is his castle. When he closes his door, he should be able to feel secure in his castle."].)

considered part of an inhabited dwelling within the meaning of Penal Code section 212.5, subdivision (a). Such an application of the statute would have nothing to do with its intent. Any member of the public can enter a hotel lobby—not just those who are staying at the hotel. That open access is different from a laundry room or garage in an apartment (*People v. Woods* (1998) 65 Cal.App.4th 345, 348–350 [75 Cal.Rptr.2d 917]), which areas are extensions of the living quarters and not generally open to the public.

"[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose . . . ." (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) I believe the holdings in this case and *People v. Wilson, supra*, 209 Cal.App.3d 451 are not only an overly expansive application of the statute, but can lead to unintended and absurd results. For those reasons, I respectfully dissent to the application of Penal Code section 212.5, subdivision (a) to the facts of this case. Otherwise I concur.

A petition for a rehearing was denied February 3, 2014, and appellant's petition for review by the Supreme Court was denied April 30, 2014, S216738.